121 So.2d 604

**J. W. BLALOCK et al.**

v.

**J. Matt JOHNSON.**

5 Div. 657.

Supreme Court of Alabama.

June 2, 1960.

Omar L. Reynolds, Reynolds & Reynolds, Clanton, for appellee.

Glen T. Bashore and Walter C. Hayden, Jr., Clanton, for appellants.

LAWSON, Justice.

This case was submitted on briefs without oral argument. At time of submission it was assigned to another Justice. It was assigned to the writer of this opinion on February 8, 1960.

The original bill was filed in the Chilton County Law and Equity Court, in Equity, on January 30, 1951, by J. Matt Johnson against J. A. Blalock and wife, Tellia Blalock, for the purpose of having the court define a boundary line between coterminous owners. §§ 2–4, Title 47, Code 1940; § 129, subdiv. 5, Title 13, Code 1940.

From a decree overruling their demurrer to the bill as then amended, the respondents appealed to this court. We affirmed on October 18, 1951. Blalock v. Johnson, 256 Ala. 349, 54 So.2d 611.

On July 1, 1952, the complainant Johnson filed a substituted bill. On the same day he directed the court's attention to the fact that the respondent J. A. Blalock died on February 14, 1952. On July 2, 1952, an order was entered by the court substituting Tellia Blalock and Woodrow Blalock, "the heirs and distributees of the said J. A. Blalock * * * in lieu of the deceased respondent, J. A. Blalock."

Testimony was taken before the ex officio register on several occasions, the first being in December, 1952, and the last in January, 1955. A showing for an absent witness was filed on September 30, 1955.

On September 9, 1955, the Governor approved Act No. 403, (Acts of Alabama, 1955, Vol. 2, p. 941), which abolished the Chilton County Law and Equity Court and created the County Court of Chilton County. In § 31 of that act it was provided that all cases pending in the Chilton County Law and Equity Court at the time the Act became law should immediately "become pending upon the docket of the County Court of Chilton County * * *."

Complainant's note of testimony was filed on May 23, 1956, and respondents' on June 14, 1956.

The special judge to whom the cause was submitted rendered a final decree on June 14, 1956. The decree was filed in the office of the ex officio register on June 23, 1956.

The final decree fixed the boundary line substantially in accordance with the complainant's contentions. The respondents have appealed to this court.

The cause was submitted here on appellee's motion to dismiss the appeal and on the merits.

Motion to Dismiss Appeal

There are grounds of the motion to the effect that the appeal should be dismissed because there was no citation of appeal served on appellee or his attorney as provided in § 801, Title 7, Code 1940, and no certificate of appeal was made out by the ex officio register and filed with the clerk of this court as provided by Supreme Court Rule 38, Code 1940, Tit. 7 Appendix.

After the motion to dismiss was filed a supplemental transcript was brought to this court showing belated compliance with the deficiencies pointed out in the grounds of the motion to dismiss presently under consideration. The supplemental transcript was filed several weeks before the cause was ready for submission on briefs. Under the recent decisions of this court the grounds of the motion to dismiss the appeal presently under consideration must be overruled. Benson-Jackson-Mathers Post No. 5106 v. Donaldson, 267 Ala. 60, 99 So.2d 688; Louisville Fire & Marine

Ins. Co. v. St. Paul Fire & Marine Ins. Co., 252 Ala. 532, 41 So.2d 585; Mutual Sav. Life Ins. Co. v. Osborne, 242 Ala. 19, 7 So.2d 319.

The trial court, at the request of the appellants, extended the time for the filing of the transcript in this court for a period of thirty days, as is authorized under Supreme Court Rule 37. However, a copy of the trial judge's order was not filed in this court within five days from the date the order was made, as is provided in Rule 37. The failure to file the trial judge's order within the five-day period is made the basis of a ground of the motion to dismiss.

■ It does not appear that appellee was in any way prejudiced by the failure to file the trial judge's order of extension within the five-day period. This portion of Rule 37 is directory and is for the purpose of informing this court as to the status of the appeal and whether or not the judge has in fact extended the time. In the instant case the judge did extend the time within the prescriptive period of the rule. We hold that this ground of the motion to dismiss should be overruled. Mitchell v. Helms, ante, p. 8, 115 So.2d 664.

The remaining ground of the motion to dismiss the appeal is that this is now a moot case. This insistence is based on the fact that since the appeal was perfected to this court the appellants, the respondents below, agreed in writing that they would convey to persons not involved in this litigation such title or interest as the courts might ultimately declare that they have in the small tract of land, title to which is involved in this proceeding.

■ The contract to sell in the event they are successful in this litigation does not, in our opinion, deprive the appellants of the right to prosecute this appeal. Their interest in the property in litigation has not yet been conveyed and their right to convey good title is dependent upon action by this court favorable to them.

The motion to dismiss the appeal is overruled.

### On the Merits

■ The decree became final on June 23, 1956, the day on which it was filed in the office of the ex officio register. Evett v. Mitchell, 251 Ala. 22, 36 So.2d 98.

On the preceding day, June 22, 1956, the respondents filed a pleading which they called an amendment to their answer and a cross bill. Respondents say that the decree of June 23, 1956, ignores this pleading and hence it should be reversed.

■ The pleading in question is not an amendment to the answer. It does not admit, deny or set up matters in avoidance of any of the averments of the bill. Equity Rule 25, Code 1940, Tit. 7 Appendix. It is not to be considered as an answer simply because it is so labeled by counsel for respondents.

■ The pleading filed on June 22, 1956, is a cross bill and nothing else. In Wilkins v. Reliance Equipment Co., 259 Ala. 348, 352, 67 So.2d 16, 19, it was said: " * * * The principle declared in our cases is that a trial on the original and cross-bill is to be had at the same time. But when the cross-complainant has not taken needed steps to get the cross-bill at issue and prepare same for trial, the court may proceed on the original bill and answer though there is also a cross-bill. Thomas v. Skeggs, 223 Ala. 598(4), 137 So. 443 * *." Here the respondents waited until after the cause was submitted and a final decree rendered, though not enrolled, before they filed their cross bill. Under such circumstances the trial court was justified in ignoring the cross bill. See Carson v. Sleigh, 201 Ala. 373, 78 So. 229.

All of the land involved in this litigation is in "the Northeast Quarter of the South-

west Quarter of Section 13, Township 23, Range 15" in Chilton County, Alabama.

The complainant and the respondents own the "North side" of this quarter section, which is in the form of a peninsula. The complainant's land is east of that of the respondents. Lay Dam Lake is to the east of the peninsula and sloughs from the lake form the northern and southern boundaries of the peninsula.

The land in dispute is in the form of a triangle. The apex of the triangle is on the northern line of the quarter section.

The base of the triangle lies along the northern side of the slough which forms the southern boundary of the peninsula.

For the purpose of a better understanding of the issues presented, we are including in the opinion a rough sketch of the locus of the dispute. This sketch was not introduced in evidence; it is not drawn to scale; it is merely our understanding of the general location of the land here involved and its surroundings as indicated by the pleadings and the evidence.

All of the land shown by the diagram was owned at one time by R. N. Ransom.

On May 14, 1935, Ransom executed a deed to H. H. Pickens, which describes the land substantially as follows: From A, the point of beginning, which is an established point 1,069 feet east of Z, the NW corner of the NE 1/4 of the SW 1/4 of Section 13, Township 23, Range 15, the description runs east 251 feet to B, which also appears to be an established section corner. From B the description runs south 3 degrees 30 minutes east a distance of 231 feet to C on the shore line of Lay Dam Lake. From C the description runs south 20 degrees 30 minutes west along the shore line of Lay Dam Lake for a distance of 107 feet to D. The next to the last call, the penultimate

call, is from D to E on the diagram, the call reading: "thence North 80 degrees, 30 minutes West along the shore line of Lay Dam Lake [slough] 411 feet." The final call from E to F is "thence North 267 feet to the point of beginning."

The trouble is that this last call does not close the description. It does not bring a surveyor to the point of beginning.

H. H. Pickens sold to Basil P. Autry by deed dated January 17, 1938. In this conveyance the same description was used as in the conveyance from Ransom to Pickens.

On March 10, 1938, Ransom executed a deed to E. L. Nicholson purporting to convey the lands included in the diagram

above, situated west of the land conveyed to Pickens in 1935.

The description in the deed from Ransom to E. L. Nicholson is substantially as follows: From X, the point of beginning, which is a black gum tree at the head of the slough, the description runs due west to Y on the section line on the west side of the section. The distance from X to Y is not shown. From Y the description runs north along the section line to Z. The distance from Y to Z is not shown. From Z the description runs east along the northern boundary of the section a distance of 1069 feet "to the property line of H. H. Pickens," that is, to A on the diagram. The next, the penultimate call, reads: "and thence South along the H. H. Pickens property line about 107 feet to the shore line of the slough." The final call is: "and thence following the shore line of said slough, which is a part of the Lay Dam Lake to the point of beginning at head of slough."

We have not shown on the diagram a terminal point of the penultimate call in the deed from Ransom to E. L. Nicholson. According to that call, such a point would be on the shore line of the slough 107 feet south of A if the H. H. Pickens property line ran south from Point A. But the shore line of the slough is between 250 and 300 feet south of A and the deed from Ransom to Pickens does not show that the latter's western boundary line runs north and south between A and the slough and, in fact, as heretofore shown, the deed from Ransom to Pickens does not accurately describe the western boundary line of the so-called Pickens property in that the description does not close.

Since the terminal point of the penultimate call in the E. L. Nicholson deed is not shown on the diagram, the final call in that deed is not shown.

E. L. Nicholson sold to J. A. Blalock and wife, Tellia, by deed dated November 15, 1941. In this conveyance the same description is used as in the conveyance from

Ransom to Nicholson. Tellia Blalock is the daughter of E. L. Nicholson. As shown above, J. A. Blalock and Tellia Blalock were the original respondents in this suit.

On July 22, 1950, the complainant, J. Matt Johnson, bought from Autry the property purportedly conveyed by Ransom to Pickens in 1935 and by Pickens to Autry in 1938. In this conveyance the same description was used as in the deed from Pickens to Autry and in the deed from Ransom to Pickens.

Johnson instituted this proceeding against J. A. Blalock and wife approximately six months after he obtained his deed from Autry.

As heretofore shown, the penultimate call in the deeds under which the Blalocks claim, which deeds we may sometime refer to hereafter simply as the Blalock deed, reads: " * * * and thence South [from Point A on the diagram] along the H. H. Pickens property line about 107 feet to the shore line of the slough."

It seems to have been conceded in the trial below that the distance recited in that call is incorrect and should be ignored. The parties seem to have agreed that the eastern boundary of the Blalock land extends from Point A the entire distance of the western boundary of the Johnson land.

Therefore, the location of the western boundary of the Johnson land was the ultimate question which the parties seem to have expected the trial court to resolve.

Johnson took the position that since the description in his deed and those under which he claimed, all of which will be sometimes referred to hereafter simply as the Johnson deed, does not close if the course and distance recited in the last call is followed from the terminal point of the penultimate call [Point E], the court should ignore the course and distance contained in the last call and should decree that the western boundary of his land is a line running from the terminal point of

the penultimate call, Point E, to the point of beginning, Point A.

Johnson further insisted that the line so determined be decreed to be the boundary between his land on the east and the Blalock land on the west.

The Blalocks took the position that all of the deeds under which the parties claim contain latent ambiguities and presented parol evidence of circumstances surrounding the execution of the deeds which they insisted demonstrated that the western boundary of the Johnson land—the eastern boundary of the Blalock land—is a line which runs between Points A and G on the diagram, that is, a line which runs south from the beginning point of the Johnson deed to the shore line of the slough.

As heretofore shown, the trial court fixed the boundary as contended for by Johnson, Line E-A. The decree does not indicate the basis of the court's action.

The trial court evidently concluded that parol evidence was not admissible to explain the true meaning of the Johnson deed and fixed the western boundary of the Johnson land as a line between Points E and A on the diagram on the theory that the expressed intention in the Johnson deed to return to the point of beginning, Point A, from the terminal point of the penultimate call, Point E, should control over the course and distance recited in the last call, even though Point E is not a fixed monument. See Irby v. Drusch, 220 Ark. 250, 247 S.W.2d 204.

In support of the trial court's decree the appellee asserts that the description in the Johnson deed is not ambiguous but repugnant, containing conflicting parts and, hence, parol evidence as to collateral circumstances should not be considered.

As far as we are advised, this court has never passed on the question as to whether parol evidence of collateral circumstances is admissible to explain the true meaning of a description in a deed which does not close. See the excellent article, "Parol Evidence for the Construction of Deeds and Wills in Alabama," by the Hon. John Edward Thornton of the Mobile Bar. XII Alabama Law Review 170.

We have found cases from other jurisdictions where that question has been presented and the rule seems to be that such evidence may be considered. Hofer v. Carino, 4 N.J. 244, 72 A.2d 335; Maxwell v. Maxwell, 12ʼ Wash.2d 589, 123 P.2d 335; Calatro v. Chabut, 72 N.J.L. 458, 63 A. 272; Grimes v. Jordan, Tex.Civ.App., 260 S.W.2d 220; Cities Service Oil Co. v. Dunlap, 5 Cir., 115 F.2d 720, 721. In the case last cited it was said in part as follows:

"* * * The language imports an actual accurate survey. It mentions a located beginning point, and a line 440 yards west therefrom to the Davis corner, another located point. No other natural or artificial object is mentioned, but the courses and distances around to the beginning point are exactly stated, and the included acreage. On its face there is neither indefiniteness nor contradiction, so that no patent ambiguity appears. But in the effort to trace the lines on the ground it is at once found that the distance from the known beginning corner to the Davis corner is not 440 yards, but one chain or 66 feet more. This discrepancy alone would make no great difficulty and would not amount to an ambiguity, because it is well settled that a distance is generally overruled by a call for a fixed object, the law esteeming that a mistake in the measurement, or in recording it, is more likely than one about the fixed object. *But if we so decide and continue according to the deed, no other fixed objects being mentioned, it develops that we do not get back to the beginning point at all, but 66 feet west of it.* If we force the course of the last line so as to reach the beginning point it will not have the direction nor the length called for, and the acreage included will be excessive. On the

other hand, if we stop on the first line at 440 yards instead of going on to the Davis corner, we find that the remaining lines, run according to the deed, do take us back to the beginning corner and include the acreage called for. There is in this situation a real doubt as to whether the call in the first line for the Davis corner or for a corner at 440 yards is correct. *That is a latent ambiguity which requires construction; and may justify a resort to extrinsic evidence, not to contradict the deed, but to explain its true meaning.* Without such evidence we should conclude that the call for 440 yards was correct and the Davis corner in error. The oral evidence leaves no doubt about it. The disputed strip was not included." (Emphasis supplied.) 115 F.2d 721–722.

In an annotation to Detroit, Grand Haven & Milwaukee R. Co. v. Howland, 246 Mich. 318, 224 N.W. 366, at page 38 of 68 A.L. R., this statement appears: "Where the calls as specified in the instrument fail to close, parol evidence is usually allowed to explain the ambiguity and to identify the land intended to be conveyed."

In the opinion rendered by this court on the first appeal (256 Ala. 349, 54 So.2d 611, 613), we rejected the contention then made by the Blalocks that the description in their deed contained a patent ambiguity. We said: "There must be a hearing on the facts."

At the time Ransom executed the deed to Pickens, under which appellee Johnson claims, all of the Ransom land was occupied by Ransom's friend Marsh, who ran a fishing camp. The cabins were located on land now conceded to belong to the Blalocks. But the boat landing used by Marsh was on the slough between Points E and G on the diagram. No survey was made as far as we can determine. Marsh handled the transaction and apparently drew the deed. It is inconceivable that Marsh would have knowingly included the property in dispute,

thereby depriving him of one of the most valuable features of the fishing camp, the only adequate boat landing available to the occupants of the cabins.

Pickens testified that he was not shown the land lines when he purchased the property and that no survey was made at that time. However, he said he never claimed the property west of Line A–G. See Sikes v. Shows, 74 Ala. 382. He made no attempt at the time he acquired his deed to disturb Marsh in his use of the slough between Points E and G as a boat landing.

We will not undertake to go into further detail in regard to the evidence which relates to the circumstances surrounding the execution of the deeds by Ransom. Suffice it to say that the voluminous testimony has been carefully considered and we are convinced that the extrinsic evidence demonstrates that the call in the Pickens deed of 411 feet from Point D is erroneous and that the western boundary of the land conveyed to Pickens was intended to be a line running from a point on the slough north to Point A, the point of beginning. This point will have to be determined by running a line south from Point A to the shore line of the slough, which line may well be in excess of 267 feet.

This line when run will constitute the boundary between the Johnson land on the east and the Blalock land on the west.

This suit does not expressly seek to reform the deeds involved, but to construe them in the light of the errors which become apparent when an effort is made to trace the calls on the ground. The result, however, may be said to be tantamount to reformation. Such was the situation in Van Valkenburg v. Geron, 249 Ala. 467, 31 So.2d 767, which, like this case, was a suit in equity to determine a disputed boundary line between coterminous owners.

The decree of the trial court is reversed and the cause is remanded for the purpose

of having the line surveyed and fixed in accordance with this opinion.

Reversed and remanded.

STAKELY, MERRILL and COLEMAN, JJ., concur.