266 So.2d 602

SOUTHERN GUARANTY INSURANCE COMPANY, a corporation

v.

Robert Gorin SCOTT et al.

1 Div. 727.

Supreme Court of Alabama.

Aug. 31, 1972.

Hill, Hill, Stovall, Carter & Franco and Harry Cole, Montgomery, Windell C. Owens, Monroeville, for appellant.

William D. Melton, Evergreen, for appellee Scott.

Brooks, Garrett & Thompson, Brewton, for appellees James Tucker and Silas Tucker.

HEFLIN, Chief Justice.

This is an appeal from a decree in a declaratory judgment action instituted by appellant-complainant Southern Guaranty Insurance Company against the appellees-respondents James Tucker and Silas Tucker, individually and d/b/a Tucker Feed and Supply Company and Robert G. Scott, seeking an interpretation of a liability insurance policy.

Appellees-respondents Tuckers sell anhydrous ammonia (liquid nitrogen) for use

as a fertilizer. They do not manufacture the liquid themselves, but purchase it from chemical companies. This liquid fertilizer is delivered to the Tuckers in tank trucks owned by the chemical companies. After the liquid fertilizer is delivered it is transferred to a large, central storage tank located at the Tuckers' place of business in Uriah, Alabama. The Tuckers own "nurse tanks" which have a capacity of 1,000 gallons each. These nurse tanks, which are fastened on a four wheel wagon and equipped with a trailer hitch, are used to transport the anhydrous ammonia from the storage tank to particular locations where it is used on farms. On some occasions the appellees-respondents Tuckers would haul the nurse tanks to their customers' farms, other times the customers would tow the nurse tanks with their own motor vehicles to their farms.

Once the nurse tank is transported to the particular location where the liquid fertilizer is to be used the customer applies it by means of an applicator, which is a tractor-pulled machine equipped with a small tank which varies in capacity from 80 to 100 gallons. The liquid is transferred from the nurse tank to the applicator by means of a hose 12 feet in length and 1 inch in diameter which, along with the nurse tank and applicator, is owned and supplied by the appellees-respondents Tuckers.

Appellee-respondent Scott was one of the Tuckers' regular customers. On May 6, 1970, Mr. Scott went to the Tucker Feed and Supply Company to get a nurse tank of anhydrous ammonia. He transported a full tank to his farm by his pick-up truck. There had been no prior arrangement to pay for the anhydrous ammonia on this particular occasion, however, the usual and customary procedure was to place the charges on an open account for Mr. Scott, who would pay at the end of the season. The charges were computed by weighing the nurse tank before the customer took it out and again when he returned it. The difference in the two weights represented the amount of liquid used, and the customer was charged accordingly.

After towing the nurse tank to his field with his truck, appellee-respondent Scott proceeded to transfer the liquid to the applicator and from there to his field. Mr. Scott had used one applicator tank of the liquid and was filling it a second time when the transfer hose ruptured, causing the fluid to spray into his eyes causing him serious personal injuries. Neither at the time of the accident, nor earlier that day had anyone from Tucker Feed and Supply Company been at Scott's farm.

Scott filed suit against the Tuckers and others for his personal injuries alleging that the Tuckers had so negligently maintained or inspected the tank that the hose attached thereto exploded. In another count Mr. Scott framed the negligence charge against the Tuckers around the failure to equip the tank with safety devices including goggles and water as was the local custom. The Tuckers delivered the suit papers to the appellant-complainant Southern Guaranty Insurance Company to defend the law suit under its policy. Southern Guaranty responded to the Tuckers' tender by filing a bill for declaratory judgment to ascertain whether its policy was applicable. Upon final hearing the Circuit Court of Monroe County, Alabama, in Equity, held that the insurance company was obligated to defend the suit filed by Scott. This appeal followed.

The insurance company contends that the insurance policy does not cover Scott's injury because the policy excludes coverage when the insured's products are handled or distributed away from the insured's premises and no operation of the insured was in progress since there was a "completed operations or product hazard" exclusion clause in the policy. The appellees-respondents, on the other hand, argue that such exclusionary clause is not applicable because the Tuckers own the equipment including the hose and that the operation of the Tuckers was not completed at the time of the occurrence.

The policy of insurance is styled "General Liability-Automobile Policy" and is in a general liability form. On the "jacket"

of the policy there are 25 different coverage parts. Such form allows for the insertion of the coverage part number and the amount of the advanced premium in appropriate places when various coverages are written. Endorsements are added to the policy to provide the provisions for each particularly applicable coverage that is purchased. In this instance, there was only one coverage and it was entitled "Manufacturers' and Contractors' Liability Insurance". For a clearer understanding the jacket of this policy is reproduced as follows:

7799

**GENERAL LIABILITY-AUTOMOBILE POLICY**

No. GLA 3958
GLA 2895
RENEWAL OF NUMBER

5.

SYMBOL OF SERVICE

COLONIAL INSURANCE AGENCY, INC. STOCK COMPANY
P. O. BOX 11000
MONTGOMERY, ALABAMA 36111

**Southern Guaranty INSURANCE COMPANY**
HOME OFFICE   MONTGOMERY, ALABAMA

**DECLARATIONS**

Item 1. Named Insured and Address:   (No., Street, Town or City, County, State)

James Tucker & Silas Tucker dba Tucker Feed & Supply Co.
Uriah, Alabama

Item 2. Policy Period:   (Mo. Day Yr.)
From 5-20-69 to 5-20-70
12:01 A.M standard time at the address of the named insured as stated herein.

The named insured is:
☐ Individual   ☒ Partnership   ☐ Corporation   ☐ Joint Venture   ☐ Other:_____

Business of the named insured is: (ENTER BELOW)
Fertilizer & feed dealer

Audit Period: Annual, unless otherwise stated. (ENTER BELOW)

Item 3. The insurance afforded is only with respect to the Coverage Part(s) indicated below by specific premium charge(s) and attached to and forming a part of this policy.

| Advance Premiums | Coverage Part No(s). | Coverage Part(s) | Advance Premiums | Coverage Part No(s). | Coverage Part(s) |
|---|---|---|---|---|---|
| $ | | Automobile Medical Payments Insurance | $ 46. | L6100 | Manufacturers' and Contractors' Liability Insurance |
| $ | | Automobile Physical Damage Insurance (Dealers) | $ | | Owner's and Contractor's Protective Liability Insurance |
| $ | | Automobile Physical Damage Insurance (Fleet Automatic) | $ | | Owners', Landlords' and Tenants' Liability Insurance |
| $ | | Automobile Physical Damage Insurance (Non-Fleet) | $ | | Personal Injury Liability Insurance |
| $ | | Completed Operations and Products Liability Insurance | $ | | Physicians', Surgeons' and Dentists' Professional Liability Insurance |
| $ | | Comprehensive Automobile Liability Insurance | $ | | Premises Medical Payments Insurance |
| $ | | Comprehensive General Liability Insurance | $ | | Protection Against Uninsured Motorists Insurance |
| $ | | Comprehensive Personal Insurance | $ | | Special Protective and Highway Liability Insurance New York Department of Transportation |
| $ | | Contractual Liability Insurance | $ | | Storekeeper's Insurance |
| $ | | Druggists' Liability Insurance | | | |
| $ | | Elevator Collision Insurance | | | |
| $ | | Farm Employers' Liability and Farm Employees' Medical Payments Insurance | | | |
| $ | | Farmer's Comprehensive Personal Insurance | $ | | |
| $ | | Farmer's Medical Payments Insurance | | | |
| $ | | Garage Insurance | $ | | |
| $ | | Hospital Professional Liability Insurance | | | |
| $ | | | | L9227 | Form numbers of endorsements, other than those entered on Coverage Part(s), attached at issue |
| $ 46. | Total Advance Premium for this policy. | | | | |

* If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on:

Effective Date   1st Anniversary   2nd Anniversary
$   $   $

Item 4. During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned: 4-28-69  lr

*Not applicable in Texas

COLONIAL INSURANCE AGENCY, INC.

By_____
Prtd. in U.S.A.   Authorized Representative

CA63771

The insuring clause of the endorsement is exceptionally broad and comprehensive. The pertinent portions of that clause are as follows:

"1. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, * * * *."

The company limits this comprehensive insuring clause by exclusions. Excluded are many hazards such as contractual liability, automobile liability, completed operations or product hazard, and others. The reasons for many of the exclusions, including automobile liability and completed operation or product hazard, are obvious in that if such coverages are provided then premiums must be charged for them and such coverages are then designated by the insertion of the proper endorsement numbers and advanced premium rates on the jacket of the cover; if not provided, then such coverages must be excluded from the broadness of insuring clauses.

The pertinent portion of the policy concerning "completed operations hazard" is as follows:

"'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage oc-

curs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"* * *"

In order to hold that the insurer was not obligated to defend the suit brought by Scott this court must find that the facts of the occurrence fall within the "completed operations" exclusion. To fall within this exclusion the injury must have occurred a) away from the premises of the insured, and b) when no operation of the insured was in progress. It is not disputed that the injury occurred away from the premises of Tucker Feed and Supply Company. The critical issue is whether the appellees-respondents Tuckers had completed their operation with regard to the business transaction with appellee-respondent Scott prior to the injury.

The appellant-complainant Southern Guaranty Insurance Company, in brief, states in substance that the insurance policy form in question was revised in 1966 and that there have been no decisions interpreting or construing the "completed operations" exclusionary clause as it is pres-

**164**

ently written. However, this insurance company contends that the decisions based upon policies issued prior to 1966 are controlling and that the distinctions between the former policy form and that presently in use are inconsequential to the decision in this case because the present form more clearly defines what constitutes a "completed operation".

In reviewing the definition of "completed operations hazard", the following appears:

" 'Operations' include materials, parts or equipment furnished in connection therewith."

■ In the instant case the Tuckers' operation pertaining to anhydrous ammonia involved the furnishing of equipment. The nurse tanks, the hose and the applicator were owned by the Tuckers and could be classified as equipment. Such equipment was furnished to most of the customers of the Tuckers, including Mr. Scott, when anhydrous ammonia was sold to them. After customers used as much of the liquid fertilizer as they desired then the nurse tank would be returned to the premises of Tucker Feed and Supply Company, weighed and charges calculated. Not having found a case in point as to when an operation has been completed in this factual situation, this court must turn to a more general definition of the word "complete" and apply it to the factual setting of the case under review. The word "complete" has been held to mean that no part, item or element is lacking; entire; consummated. Versailles Tp. v. Ulm, 152 Pa.Super. 384, 33 A.2d 265.

Such general definition and the following language of the policy are pertinent to a proper holding:

"Operations shall be deemed completed at the earliest of the following times.:

(1) when all operations to be performed by . . . the named insured under the contract have been completed;

(2) when all operations to be performed by . . . . the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury . . . arises has been put to its intended use by any person . . .".

■ As to the first alternative quoted above, it appears obvious that the use of the equipment had not been completed at the time of the injury. Certainly this court cannot say that no element was lacking in the transaction between the Tuckers and Scott, nor can this court say that the Tuckers had no further interest in the transaction after delivering the anhydrous ammonia. As a part of the transaction of furnishing the anhydrous ammonia the Tuckers provided the nurse tank, the hose, and the applicator. Such equipment was still in use at the time of the injury. The tank had to be weighed upon its return before the Tuckers could determine the proper amount to charge Scott on his open account. This weighing-in process could have been found by the trial judge to be a part of the operation.

As to the second alternative quoted above, the use of the equipment was a part of the operation of the Tuckers. Certainly the use of the equipment had not been completed at the time of the injury at the "site of the operations", if Scott's farm be construed as the "site of the operations", or, on the other hand, if the "site of the operations" be construed to be Tucker's Feed and Supply Company then all operations were not completed at the time of the injury. The equipment was still being used and the weighing-in process remained unperformed.

■ The third alternative does not apply to this factual setting because the injury did not arise out of any work performed by the Tuckers but rather through an operation by which a product was furnished along with the temporary use of equip-

ment for the application of the product to the soil. Even if the operation could be construed as a "work" of the Tuckers it had not reached the stage where the work had been put to its intended use. The intended use was as a fertilizer. Therefore, the work of the Tuckers would have had to reach the stage where the liquid nitrogen was actually fertilizing the growth of the crops on the land. It is rather obvious that the intention of this alternative is to apply to factual settings similar to where a building contractor has completed his work on a residence house. Under such circumstances his work would be completed on a residence building when it becomes occupied (put to its intended use).

Southern Guaranty Insurance Company, in support of its contention that James and Silas Tucker had completed their operations prior to the injury, cite Ketona Chemical Corp. v. Globe Indemnity Co., 404 F.2d 181 (5th Cir. 1968); Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7 (1937); Liberty Mutual Insurance Co. v. Gwin, 370 F.2d 297 (5th Cir. 1966); and Inductotherm Corp. v. New Jersey Manufacturers Casualty Insurance Co., 83 N.J.Super 464, 200 A.2d 358 (1964).

By the appellant-complainant's admission these cases do not involve the same policy language interpretation.

In *Ketona* the insured, Ketona Chemical Corporation, manufactured agricultural chemicals and shipped them to buyers in railroad tank cars which it had leased from Union Tank Car Company. The insured had loaded a tank car for shipment to Home Guano Company, who had sub-leased the car from Ketona. Upon arrival at Home Guano's plant the car was placed on a sidetrack and used as a storage receptacle. Its contents were unloaded as needed by means of pipes. An employee of Home Guano was injured while removing a bushing from the tank car after the chemical had been unloaded and the pipes removed.

The insurer, Globe Indemnity Company, argued that the insurance policy issued to Ketona, which was similar to the policy in the instant case, did not cover such an injury. This issue turned on whether the injury was within the "completed operations" exclusion of the policy, which stated that such a delivery was to be considered an operation. The trial court concluded that this operation was completed when the accident occurred away from the premises of the insured following delivery and this finding by the trial court was affirmed. However, the *Ketona* case can be distinguished from the present case even if the same definition of "operations" as appears in the policy in the instant case had been included in the policy of that case, which it was not. The tank car in *Ketona* was subleased to the insured's customer and the insured had no further control or interest in the transaction after loading the car at its plant, or at least upon arrival at its customer's place of business. There was no sub-lease agreement between Tucker Feed and Supply Company and Scott in the instant case, nor was Tucker disinterested in the transaction after delivering the anhydrous ammonia to Scott, because the nurse tank had to be returned and weighed before the proper charge for the liquid could be computed and entered on Scott's open account.

The insurance policy in *Loveman,* supra, so far as the case reveals, did not contain a "completed operations" exclusionary clause, and for this reason furnishes little guidance in determining when an operation is "complete".

In the *Liberty Mutual* case, supra, the insured sold heating and air conditioning equipment and gaseous refrigerants used in servicing the equipment. He purchased the refrigerant in cylinders from various manufacturers, who require distributors, such as the insured, to pay a $12 deposit per cylinder which is refunded upon return of the empty cylinder, however, the distributors are not obligated to return the cylinders, but may forfeit their deposit in

the event that they fail to return them. The distributors, in a similar fashion, require their customers to put up a $12 deposit per cylinder, which is refunded if and when it is returned to the distributor. The distributor's customers may, and often do, find need for an empty cylinder to be refilled by the customer. In such cases the customer simply pays the standard $12 deposit and obtains an empty cylinder, all other aspects of the transaction are identical to obtaining a full cylinder. Mobile Gas Service Corporation, a customer of the insured, obtained an empty cylinder from the insured, paying the $12 deposit, after which the insured had no further connection with the cylinder. The cylinder was filled and refilled by Mobile Gas a number of times during the following two years, until it exploded injuring an employee of Mobile Gas.

This case is of little assistance to appellant-complainant Southern Guaranty because the issue there was whether there was a sale of the cylinder or whether the title to the cylinder remained in the manufacturer, with only a possessory license being transferred. The Fifth Circuit held since the transaction fell within the meaning of a "sale" as defined in the Alabama Sales Act a sale occurred and, therefore, there was no coverage. The appellant-complainant cites this case under a proposition of law but does not refer to it in the argument portion of his brief. Little or no comfort can be given to appellant-complainant by this case.

Appellee-respondent Scott contends that the appeal should be dismissed because the record shows there was no citation of appeal served on Mr. Scott or his attorney. Appellee-respondent Scott further contends that a supplemental transcript, filed by appellant-complainant prior to submission on briefs, setting forth the service of the citation of appeal, should be stricken.

This court has held that where a supplemental transcript is filed prior to submission setting forth the service of the citation of appeal and no injury or inconvenience is shown by the belated compliance, the motion to dismiss is not well taken. Blalock v. Johnson, 270 Ala. 654, 121 So.2d 604; Louisville Fire & Marine Ins. Co. v. St. Paul Fire & Marine Ins. Co., 252 Ala. 532, 41 So.2d 585; Mutual Sav. Life Ins. Co. v. Osborne, 242 Ala. 19, 7 So.2d 319. It follows that the motion to strike the transcript and dismiss the appeal must be overruled.

In summary, this court feels that the trial court was within its rights in finding that the operation of Tucker Feed and Supply Company relative to the Scott transaction was not complete at the time of the injury. It, therefore, follows that Mr. Scott's injury does not fall within the "completed operations" exclusion in the policy and Southern Guaranty Insurance Company is obligated to defend the Tuckers and satisfy any judgment against them up to its policy limits.

Affirmed.

MERRILL, HARWOOD, MADDOX and SOMERVILLE, JJ., concur.