UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant,

v.

Harry HOUF, et al., Defendants-Respondents.

No. 48965.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 13, 1985.

Pierre Dominique, Jefferson City, for plaintiff-appellant.

John M. McIlroy, Bowling Green, for defendants-respondents.

SMITH, Presiding Judge.

Plaintiff insurance company appeals from a declaratory judgment holding that plaintiff is required by its policy to represent, defend and provide coverage to defendant Houf from lawsuits to which he is a party defendant. We affirm.

The lawsuits arise from a single vehicle accident in which the driver was killed and several passengers were injured. Allegedly, the accident occurred when the vehicle struck a mound of dirt on Old Picnic road in Montgomery County. The mound was located at a point on the road where a detour commenced and served to block access to the original, then impassable, section of road. Houf is engaged in the excavating, grading and road construction business. Floyd Andrews is also engaged in the same business. Sometime in 1975 the two men worked together on a job stripping overburden covering fire clay wanted by Kaiser Aluminum. The clay was then mined by Wilcoxen and Long for Kaiser. At that time Houf and Andrews became aware that another similar job was available for Kaiser on the Powell property adjoining Old Picnic road. They submitted a bid to Kaiser to remove the overburden for .40¢ a cubic yard plus a charge of $26 per hour for other heavy equipment usage. The job contemplated the removal of the overburden and restoration and reclamation of the site after the mining was completed. The bid was submitted by Andrews and was accepted by Kaiser.

During the course of stripping the overburden a severe storm caused a section of Old Picnic road to wash out. Andrews and Houf then built the detour which was to remain until reclamation of the land at which time the original road would be restored. Stripping of the overburden was completed in early April 1976. Mining was completed in August 1976. Andrews contacted Houf to obtain his help in reclaiming the land which Houf had planned and promised to do. However, at that time he was busy with another job and before he was able to return to the Powell site Andrews had completed the reclamation. During the reclamation, but prior to its completion, the accident occurred. As part of the reclamation, and after the accident, Old Picnic road was restored to its original location.

Some initial clearing of brush was done solely by Andrews' employees and he received all compensation for that work. Stripping of the overburden and construction of the detour was done by Andrews' and Houf's employees and they each re-

ceived half of the proceeds from that work. They had agreed beforehand that because of difficulties in determining the amount of overburden removed during the progress of the job, each of them would provide an equal number of employees and an equal amount of equipment on each day of work. Andrews and Houf were separately responsible for their own expenses. Andrews received all compensation paid for the reclamation of the land.

The insurance policy involved here was issued by plaintiff to Houf effective July 1, 1976. Prior to that time Houf had been insured by Bituminous Casualty Company. Plaintiff's policy was entitled "Comprehensive General-Automobile Liability Insurance." The particular policy provisions involved in this case will be set forth in discussing the points raised.

Plaintiff has raised three points on appeal. Initially it contends that the trial court erred in finding that an alleged "completed operations" exclusion did not apply. Secondly, it contends that the court erred in failing to find that plaintiff's policy was not in effect at the time of any negligent act by Houf and therefore did not provide coverage. Finally, it charges trial court error in failing to find a joint venture between Andrews and Houf thereby triggering a "joint venture" exclusion.

## COMPLETED OPERATIONS EXCLUSION

The coverage schedule of the comprehensive general liability insurance provided by the policy delineates "Description of Hazards." Under that description is the hazard "Premises-Operations." That hazard is further defined as "Street or Road Construction or Reconstruction—clearing of right of way, excavation, filling, grading, bridge or culvert building. Excavation, Grading of Land." The schedule then lists the premiums charged for these coverages.

No premiums are listed for several other hazards described including "Completed Operations." Testimony at trial was to the effect that unless a premium was filled in for a coverage then no coverage of that item is afforded. The insuring clause for the general liability coverage provides:

> "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies caused by an occurrence ...."

"Occurrence" is defined as meaning "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The coverage provision also includes exclusions lettered from (a) through (p). "Completed operations" is not a listed exclusion nor are there any endorsements limiting coverage of "completed operations." In the definitions section "completed operations hazard" is defined. Plaintiff takes the position that the reference to "completed operations hazard" in the definitions combined with the failure to list a premium next to that hazard on the Coverage schedule serves to exclude coverage for such operations from the policy.[1] The trial court agreed with that contention although also finding no completed operation. On appeal Houf has made no attack on the trial court's finding or plaintiff's argument that "completed operations" were excluded. We entertain serious doubts of the validity of that finding and argument. The coverage section and the definition of "occurrence" are certainly arguably broad enough to provide coverage for any accident arising from road construction by defendant whether in progress or completed. Nothing in the policy specif-

---

**1.** Plaintiff also relies upon a letter from the agent to the insured that the insured had de- clined "completed operations" coverage.

ically excludes "completed operations" from the coverage granted and it is at least questionable that such exclusion is or can be created through the implication asserted by plaintiff. However, we will address the "completed operations" question on the basis of the issues raised by the parties on appeal.

■ "Completed operations" exclusions are valid and enforceable. *Abco Tank & Manufacturing Company v. Federal Insurance Company,* 550 S.W.2d 193 (Mo. banc 1977); *A.D. Turner v. United States Fidelity and Guaranty Company,* 440 So.2d 1026 (Ala.1983); *Lavalleur v. State Automobile & Casualty Underwriters,* 208 Neb. 82, 302 N.W.2d 362 (1981); *Martinez v. Villa Construction Corporation,* 38 Colo.App. 302, 563 P.2d 954 (1976).

■ The definition of the "completed operations hazard" states:

"Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

It is readily apparent that neither of the first two conditions are applicable here.

Houf's agreement with Andrews was to assist in removing the overburden, and upon the completion of the mining to assist in reclaiming the land and restoring the original road. At the time of the accident the reclamation and restoration were not complete. That Houf did not in fact participate in those aspects of the project because of another job makes no difference. He intended to be, and was expected to be, a part of the reclamation and restoration and under his agreement his operations at the site were not completed until those were complete. Nor do we find the third alternative applicable. Plaintiff focuses in on the detour itself as a separable portion of the work and opines that once it was finished and in use that operation was completed. We do not interpret the third alternative so narrowly. A detour is by definition "a roundabout way temporarily replacing a part of a route." Webster's Third New International Dictionary. The detour was not, and was never intended to be, a permanent structure. It was to remain only until the completion of the reclamation of the land and rebuilding of the original road. It was created as part of the stripping operation and only because of that operation. The mound which caused the injury was in the right-away of the permanent road and was to be removed upon restoration of the original road. The roadway as it existed at the time of the accident was temporary in nature and Houf had agreed to help in restoring it to its original condition. The temporary use of the detour was not the "intended use" of the land contemplated by Kaiser, Andrews or Houf at the time of the accident. If "completed operations" were excluded by the policy the facts here do not establish a "completed operation." Contrast *Abco Tank & Manufacturing Company v. Federal Insurance Company, supra; Southern Guaranty Insurance Company,* 289 Ala. 159, 266 So.2d 602 (Ala.1972) and *United States Fidelity & Guaranty Co. v. National Tank & Machine Works, Inc.,* 402 So.2d 925 (Ala. 1981) with *Hartford Accident and Indemnity Company v. Burmeister,* 207 Neb. 206, 297 N.W.2d 401 (Neb.1980); *Turner v.*

*U.S.F. & G., supra; Lavalleur v. State Automobile & Cas. Underwriters, supra,* and *Martinez v. Villa Construction Corp., supra.* The court did not err in finding that coverage was not defeated because of a "completed operation."

## POLICY EFFECTIVE DATE

 Because the allegedly negligent act of defendant preceded the effective date of the policy, plaintiff contends the policy affords no coverage. We note in passing that this issue was not pleaded, was not added to the petition by interlineation, and was not relied upon by the plaintiff at any time before the trial court. The issuance date of the policy and the existence of a prior policy from Bituminous were testified to during the trial but not in a posture to alert the court or the defendant to the defense now raised. We do not consider it is properly before us. *Gee v. Gee,* 605 S.W.2d 815 (Mo.App.1980) [1, 2]. Regardless the point is without merit. The issue of liability on a policy insuring against loss or damage is determined by the time when the loss occurs, not by the time of the negligent act. *Hawkeye-Security Ins. Co. v. Iowa National Mutual Ins. Co.,* 567 S.W.2d 719 (Mo.App.1978) [1]; *Kirchner v. Hartford Accident & Indemnity Co.,* 440 S.W.2d 751 (Mo.App.1969) [2]. The accident occurred while plaintiff's policy was in effect.

## JOINT VENTURE

 The policy contains a provision that it does not apply to bodily injury or property damage arising out of the conduct of a joint venture. The trial court found no joint venture but rather a relationship between Andrews and Houf more nearly like that of contractor-subcontractor. We are bound in our review by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). There was evidence to support the finding of the trial court. A joint venture as a general rule requires a community of interest in the accomplishment of a common purpose, a mutual right of control, a right to share in the profits and a duty to share in the losses. *State ex rel. Knight Oil Co. v.*

*Vardeman,* 409 S.W.2d 672 (Mo. banc 1966) [5–8]. The evidence here established that Andrews alone entered into the agreement with Kaiser, billed Kaiser for the work done, and distributed the money received to himself and Houf. Houf was asked by Andrews to assist in doing the project. Andrews exercised control at the job site; Houf did not and testified he did not believe he had authority to do so. Each man was responsible for his own expenses. Whether either sustained a profit or loss was solely dependent on his own operation; there was a sharing of neither profits nor losses, only of certain of the proceeds. Andrews and Houf agreed to supply equal numbers of men and equipment because it was impossible during the work to determine the amount of overburden removed.[2] In that way the total amount received could be divided equally on the supposition that equal men and equal equipment constituted equal work. Andrews completed the job without Houf and did some preliminary site preparation before Houf began work for all of which he alone received the proceeds. We find no error in the trial court's finding that the relationship between Andrews and Houf was not a joint venture.

Judgment affirmed.

SNYDER and SATZ, JJ., concur.

---

**2.** That determination was made at the conclusion of the removal by Kaiser's engineer.