**William SURDYKA, Plaintiff,**

**v.**

**Verne H. DeWITT, d/b/a OK Tool Rentals, Defendant and Third–Party Plaintiff–Appellee,**

**v.**

**SHELTER GENERAL INSURANCE COMPANY, a Missouri corporation, Third–Party Defendant–Appellant.**

No. 88CA0155.

Colorado Court of Appeals,
Div. IV.

July 6, 1989.

Rehearing Denied Aug. 10, 1989.

Certiorari Denied Dec. 18, 1989.

Timothy J. Simmons and David J. Margrave, Colorado Springs, for defendant and third-party plaintiff-appellee.

Kane Donley & Shaffer, Mark H. Kane, Colorado Springs, for third-party defendant-appellant.

Opinion by Judge PLANK.

Shelter General Insurance Company (Shelter Insurance) appeals the judgment entered upon a jury verdict finding it liable for bad faith breach of an insurance contract. We affirm.

In July of 1983, plaintiff, William Surdyka, rented camper jacks from the OK Tool Rental Company, owned by defendant Verne DeWitt (insured). These camper jacks were designed to lift a camper or trailer so that a pick-up truck could be placed beneath the camper and then the camper could be secured to the truck. Prior to the plaintiff's rental of the camper jacks, the insured had replaced the lifting cables in one of the jacks. While the plaintiff was using the camper jack, these lifting cables snapped, and the plaintiff was injured. As a result, plaintiff filed this action against the insured for personal injuries and property damage.

The insured had a general liability insurance policy from Shelter Insurance. When the insured was informed of the plaintiff's accident, he notified his Shelter Insurance agent, but Shelter Insurance denied coverage.

While the personal injury suit was pending, the insured impleaded Shelter Insurance seeking declaratory relief, asserting breach of contract, estoppel, and bad faith breach of an insurance contract. The insured's claims against Shelter Insurance were severed and tried prior to the plaintiff's personal injury trial against the insured.

The trial court directed a verdict on the existence of coverage under the Shelter Insurance policy and instructed the jury to consider damages for breach of the insurance contract. The jury was also instructed to determine whether there had been a bad faith breach of the insurance contract and, if so, to consider damages therefor. The jury returned a verdict for the insured against Shelter Insurance in the following amounts: $5000 in actual damages for expenditures on attorney fees for breach of contract, $60,000 in personal injury damages for the claim of bad faith breach, and $25,000 in punitive damages for bad faith breach of an insurance contract. This appeal followed.

## I.

Shelter Insurance initially contends that the trial court erred in directing a verdict that the insurance policy provided coverage for the accident and injuries sustained by plaintiff. It contends that the "completed operation" clause present in the insurance policy excluded coverage for this type of incident. We disagree.

The interpretation of insurance contracts involves a question of law. *Benham v. Manufacturers & Wholesalers Indemnity Exchange*, 685 P.2d 249 (Colo.App.1984).

The burden of proof is upon the insurer to establish the applicability of an exclusion to coverage. *See West v. Credit Life Insurance Co.*, 30 Colo.App. 455, 494 P.2d 601 (1972). Moreover, insurance policies that purport to grant broad coverage must be interpreted to further the principle of coverage, and any exclusions must be clear

and specific to be enforceable. *United Fire & Casualty Co. v. Day,* 657 P.2d 981 (Colo.App.1982). Also, any ambiguities in a policy should be construed most strongly against the insurer. *Coxen v. Western Empire Life Insurance Co.,* 168 Colo. 444, 452 P.2d 16 (1969).

■ Here, the policy in question provides an exclusion for "completed operations" hazards. The clause at issue provides that coverage is excluded for:

"Bodily injury and property damage arising out of operations or reliance upon a misrepresentation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations *have been completed* or abandoned and occurs away from premises owned or rented to the named insured. Operations includes material, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) When all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) When all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principle [sic] as a part of the same project.

Operations which may require further service or maintenance work or *correction, repair or replacement* because of any defect or deficiency, *but which are otherwise complete,* shall be deemed completed." (emphasis added)

It is Shelter Insurance's contention that the insured's replacement of the lifting cables on the camper jack constituted a "completed operation" and that, therefore, injury resulting from negligence in that replacement was excluded from coverage. We disagree.

The word "complete" has been held to mean that no part, item, or element is lacking. *Southern Guaranty Insurance Co. v. Scott,* 289 Ala. 159, 266 So.2d 602 (1972).

None of the specific alternatives in the policy defining a "completed operation" is applicable here.

As to the first alternative, "the operations to be performed by or on behalf of the named insured" had not been completed at the time of the injury. As the plaintiff had to return the camper jack to the insured, a transaction between the plaintiff and the insured still remained to be completed.

As to the second alternative, the rental of the camper jack had not been completed at the time of the injury at the "site of operations." This is true whether the "site of operations" is construed to be where the injury occurred or the insured's place of business. If we construe "site of operations" to be where the injury occurred, all operations were not complete because the plaintiff was *using* the camper jack *when* he was injured. Since the injury did not occur on the premises of the insured, this exclusion is inapplicable if the "site of operations" is construed to be the insured's place of business.

As to the third alternative, it is obvious that the intention of this alternative is to apply to factual settings similar to those in which a building contractor has completed his work on a residence. Under such circumstances his work would be completed on the building, when it became occupied ("put to its intended use"). *Southern Guaranty Insurance Co. v. Scott, supra; see Martinez v. Hawkeye–Security Insurance Co.,* 195 Colo. 184, 576 P.2d 1017 (1978). Hence, it has no relevance here.

We affirm the trial court's determination that a completed operations clause is not applicable to rental equipment. Should we adopt the position asserted by Shelter Insurance, insureds would be penalized for repairing dangerous and defective equipment. This we decline to do.

Furthermore, we concur with the trial court's reliance on the analysis set forth in

*Sun Insurance Co. v. Hamanne,* 113 N.H. 319, 306 A.2d 786 (1973) which states:

"[S]ince the rental of the machine contemplated its return and no performance of operations by or on behalf of the named insured, it was neither an operation nor completed within the definition of completed operations hazard."

The evidence supports the trial court's directed verdict that the completed operations exclusion did not apply and that the Shelter Insurance policy provided liability coverage for the plaintiff's accident involving the camper jacks. As a result, we will not disturb this ruling on appeal.

## II.

Shelter Insurance next argues that the trial court erred in denying its motion for a directed verdict on the insured's claim for bad faith breach of an insurance contract. Specifically, it argues that this claim should not have been submitted to the jury because the expert testimony necessary to establish the standard of care applicable to a reasonably prudent insurance company was not presented at trial, and the insured, according to Shelter Insurance, failed to present any such evidence. We disagree.

■ The duty of the insurer to act in good faith when dealing with its insured is a duty implied by law as a covenant of the insurance contract. *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984) (*Trimble I*). The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured. *Trimble I, supra.*

■ Here, the standard of conduct of Shelter Insurance in relation to the insured must be measured by general principles of negligence. *Trimble I, supra.* The question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances. *Trimble I, supra.* The relevant inquiry is whether the facts show the absence of any reasonable basis for

denying the claim, "*i.e.,* would a reasonable insurer under the circumstances have denied or delayed payment of the claim under these facts and circumstances." *Trimble I, supra.*

■ When the standard of care involves questions beyond the competence of ordinary persons, expert testimony may be required to establish that standard. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo. 1984). However, here we conclude the question of whether Shelter Insurance breached the standard of care applicable to a reasonable insurance company did not entail specialized knowledge or skill unique to a particular discipline and beyond the knowledge and experience of the average juror. *See Palmer v. A.H. Robins Co., supra.* Thus, under the circumstances at issue here, expert opinion evidence was not essential to the insured's claim of bad faith breach of the insurance contract.

## III.

Shelter Insurance next contends that the trial court erred, as a matter of law, in submitting the issue of punitive damages to the jury. We disagree.

■ Punitive damages are recoverable only pursuant to statute and are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. *Farmers Group, Inc. v. Trimble,* 768 P.2d 1243 (Colo.App.1988) (*Trimble II*). Bad faith breach of an insurance contract is a tort *Trimble I, supra.*

Pursuant to § 13–21–102, C.R.S. (1987 Repl.Vol. 6A), entitlement to an award of punitive damages requires that "the injury complained of [be] attended by circumstances of fraud, malice, or willful and wanton conduct." Whether the evidence is sufficient to warrant submission of the question of punitive damages to the jury is a *question of law. Trimble II, supra; Palmer v. A.H. Robins Co., supra.*

■ The record demonstrates that there was sufficient evidence submitted to the trial court from which a juror could conclude, beyond a reasonable doubt, that

Shelter Insurance's actions were willful and wanton or in reckless disregard of the insured's rights and feelings. *See* § 13–25–127(2), C.R.S. (1987 Repl.Vol. 6A). The record supports the trial court's denial of Shelter Insurance's motion for a directed verdict. Hence, the issue was properly submitted to the jury, and the award for punitive damages will not be disturbed on appeal.

Accordingly, the judgment is affirmed.

REED and DUBOFSKY, JJ., concur.