ORNAMENTAL IRON & STAIR COMPANY v GENERAL
ACCIDENT & LIFE ASSURANCE CORPORATION, LTD.

1. INSURANCE—LIABILITY INSURANCE—EXCLUSIONS—AMBIGUOUS
   TERMS—CONSTRUCTION OF AMBIGUITIES.

   An insurer has a duty to express clearly the limitations of its
   obligation, and any ambiguities in an insurance policy must be
   construed against the insurer.

2. INSURANCE—LIABILITY INSURANCE—EXCLUSIONS—PRODUCTS HAZ-
   ARD EXCLUSION—OPERATIONS EXCLUSION—PRODUCTS MANUFAC-
   TURED—CONSTRUCTION CONTRACTORS.

   A "products hazard" exclusion and a "completed operations"
   exclusion in an insurance contract do not exclude coverage for
   an insured who is allegedly responsible for the negligent con-
   struction of a safety fence designed to protect against the
   electrical hazard that killed a painter, where the contractor
   handles no products but is engaged solely as a construction
   contractor, where the policy was issued to fully protect the
   contractor against liability for acts of negligence committed by
   him during the performance of a contract, where the claim
   against the contractor arose out of alleged acts of negligence
   committed during construction and not from the completed
   product, and where the policy was in full force and effect when
   the allegedly negligent acts occurred.

Appeal from Wayne, John M. Wise, J. Submitted
February 10, 1976, at Detroit. (Docket No. 24837.)
Decided March 25, 1976. Leave to appeal denied,
397 Mich 837.

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am Jur 2d, Insurance § 257 *et seq.*
[2] 44 Am Jur 2d, Insurance §§ 1422, 1423.
   Scope of clause excluding from contractor's or similar liability
   policy damage to property in care, custody, or control of insured.
   62 ALR2d 1242.
Risks covered by contractor's liability policy. 156 ALR 1285.

Complaint by Ornamental Iron & Stair Company against General Accident & Life Assurance Corporation, Ltd., seeking declaratory relief to determine if an insurance policy required the defendant to defend the plaintiff against a third party action and to pay any judgment resulting therefrom. Summary judgment for plaintiff. Defendant appeals. Affirmed.

*Hyman & Rice* (by *Abba I. Friedman*), for plaintiff.

*Sommers, Schwartz, Silver, Schwartz & Tyler* (by *Charles C. Warner*), for defendant.

Before: M. F. CAVANAGH, P. J., and R. B. BURNS and F. C. ZIEM,* JJ.

R. B. BURNS, J. Defendant appeals from a summary judgment in favor of plaintiff requiring the defendant to defend the plaintiff against, and to pay any judgment resulting from, a third-party action brought ancillary to *Wilhelm v The Detroit Edison Co,* 56 Mich App 116; 224 NW2d 289 (1974).

Wilhelm was a painter who was electrocuted by a high-tension wire while working on the roof of the S. S. Kresge Company building located within the Pontiac Mall shopping center. Wilhelm's administratrix brought a wrongful death action against Detroit Edison, Pontiac Mall, and Kresge. The Mall filed a third-party complaint for indemnification and/or contribution against the various contractors (including the plaintiff) allegedly responsible for the negligent construction of a safety fence designed to protect against the electrical hazard that killed the painter.

The plaintiff was dismissed from the wrongful

---

* Circuit judge, sitting on the Court of Appeals by assignment.

death action before trial on a motion for summary judgment. Subsequently, the case was tried by a jury and a verdict in favor of Wilhelm was rendered against Edison and the Mall. The Court of Appeals affirmed the verdict but reversed the summary judgment on behalf of the plaintiff and the other third-party defendants. Plaintiff then began this suit for declaratory relief to determine if the "Combined Comprehensive Liability Policy" in force at the time of the allegedly negligent installation of the fence required the defendant to defend, and, possibly, to pay any judgment rendered against the plaintiff.

The trial court found that the insurance policy in question was ambiguous, and that the ambiguity must be resolved in favor of the plaintiff insured.

The Comprehensive Liability Policy in effect at the time of installation provided:

"Coverage B—Bodily Injury Liability—Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay or the liability of others assumed by him under contract for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons.

\* \* \*

"Exclusions. This policy does not apply:

"(e) Products Hazard. The term 'products hazard' means

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured

or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold.

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided [operations shall not be deemed incomplete because improperly or defectively performed] or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

There is a split of authority throughout the country concerning the interpretation of "products hazard" and "completed operations" exclusionary paragraphs of insurance contracts, under facts similar to the facts of this case.

Michigan courts have not ruled on this particular issue, although the United States Court of Appeals, Sixth Circuit, affirmed a decision of the United States District Court for the Eastern District of Michigan in *McNally v American States Insurance Co,* 308 F2d 438 (CA 6, 1962) which held that the contract was ambiguous.

In our opinion the better view was expressed in *Nielson v Travelers Indemnity Co,* 174 F Supp 648, 658–659 (ND Iowa 1959), when the Court quoted from *Kendrick v Mason,* 234 La 271; 99 So 2d 108 (1958):

"That Court stated (at page 114 of 99 So 2d):

" 'It must be observed that neither the accident nor the damage resulting therefrom was caused by the sewer system itself, that is, the finished product, but was the direct result of the tort committed by Mason during the performance of his contract and during the life and term of the policy issued by the insurer.

" 'The insurer contends that Mason purchased only ordinary operations coverage, paying no premium for products or completed operations protection; that his coverage protected him only as against accidents which occurred during the progress of the work and that accidents occurring after the completion of the work were not covered. In other words, the insurer contends that the dividing line between liability and nonliability under the policy is the moment of completion or abandonment of the work covered.

" 'The insurer further contends that accidents occurring during the progress of the work and accidents happening after completion of the work are distinctively different risks, carrying separate and distinct premium rates, and that an accident occurring during the course of the work covered is an operation risk and one occurring after completion is a products or completed operations risk for which Mason is not covered, having declined same.'

"That Court further stated (at pages 116, 117 of 99 So 2d):

" 'It is significant that the policy contract does not recite that any of these exclusions pertains to or refers to contractors who have no products for sale but who have performed a contract for the installation of a public utility, as in the instant case, or even the erection of any structure, public or private; whereas the policy does specifically recite that the assured, C. N. Mason, is a sewer and water main contractor. By no means of interpretation known to us can it be positively asserted that the exclusions in the policy and the endorsements attached thereto referred to contractors, and we deem it the fundamental duty of the insurer to express clearly the limitations of its obligation.

* * *

" 'In the instant case the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligation therein. An analysis of the exclusion and exceptions therein clearly demonstrates an ambiguity and vagueness which under our well settled jurisprudence must be construed against the insurer.

* * *

" 'We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him. The policy was issued to fully protect Mason against liability for acts of negligence committed by him during his performance of the contract. The tort which was the proximate cause of the damages sustained by plaintiff was in fact and in law committed during the performance of the construction contract. Both the accident and the injuries resulting therefrom were brought about not from the completed and accepted sewer system but from the direct result of the acts of negligence committed during its construction. The policy covering said accidents for which premiums were charged was then in full force and effect; and the conclusion is inescapable that the insurer is therefore liable in solido with its insured, Mason.' "

Affirmed. Costs to plaintiff.