ABCO TANK AND MANUFACTURING
COMPANY, Appellant,

v.

FEDERAL INSURANCE COMPANY,
Respondent.

No. 59610.

Supreme Court of Missouri,
en banc.

May 10, 1977.

A. L. Shortridge, Joplin, for appellant.

Paul H. Niewald, Kansas City, for respondent.

HENLEY, Judge.

This is a declaratory judgment action brought by an insured against its insurer. The judgment sought is one declaring that under its comprehensive general liability insurance policy the insurer is obligated to pay the cost of defense of insured and, within the limits of the policy, pay any judgment which may be recovered against insured in a pending action for property damages arising out of an explosion and fire at a facility installed by insured for another. From an adverse judgment, the insured appealed to the Court of Appeals, Springfield District. On recommendation of that court after submission but without

opinion, the case was transferred here for decision.

The main question presented is whether, within the meaning of the policy as defined in its "completed operations hazard" provisions, installation of the facility was completed before or after the explosion and fire.[1] If it was completed before the fire, the policy afforded no coverage because an endorsement excluded coverage for the hazards of completed operations. We hold that it was completed after the fire and reverse and remand.

In January 1971, Abco Tank and Manufacturing Company (hereinafter Abco) entered into a contract with Doane Feed Products Company hereinafter Doane) in which Abco agreed for a specified price to install at Doane's plant in Joplin, Missouri, a liquid propane standby heating facility so that Doane could continue production in its manufacturing plant during cold weather when its natural gas supply would be curtailed. In particular, Abco agreed: (1) "to furnish all necessary equipment, valves, piping, labor, painting, startup supervision to complete this installation"; (2) that "the installation, when completed, shall be capable of providing up to 25,000 cubic feet per hour of completely interchangeable gas-air mixture of approximately 1450 Btu per cubic foot at 45 to 50 PSI"; (3) that the vaporizer, one of the component parts to be furnished, would be capable of converting 500 gallons of liquid propane per hour into 65 PSIG of propane vapor while operating at an ambient temperature as low as −20°

---

1. This case presents to this court for the first time questions involving the "completed operations hazard" provisions of the *revised* standard comprehensive general liability insurance policy adopted by the insurance industry effective October, 1966. See: Gowan, *Completed Operations and Products Liability Insurance Coverage Of The New Comprehensive General Automobile Policy.* 1966 Proceedings of A.B.A. Section Of Insurance, Negligence and Compensation Law, pp. 265–293.

Cases cited by the parties involving comprehensive general liability insurance policies used in the insurance industry before adoption of the new policy in 1966 have been considered but have been of little value in deciding this case. Cases considered involving the new policy are:

*Williams v. New Mexico State Highway Commission,* 82 N.M. 550, 484 P.2d 770, 772[2] (1971); *Southwestern Bell Telephone Co. v. Travelers Indemnity Co.,* 252 Ark. 400, 479 S.W.2d 232 (1972); *Security Ins. Co. of Hartford v. Kaye Milling Supply Inc.,* 297 Minn. 348, 211 N.W.2d 519 (1973); *Hanover Insurance Co. v. Hawkins,* 493 F.2d 377 (7th Cir. 1974); *Aetna Casualty & Surety Co. v. Rothman,* 331 So.2d 81 (La.App.1976); *W. N. Leslie, Inc. v. Travelers Insurance Co.,* 264 S.C. 408, 215 S.E.2d 448 (1975); *Whitten Oil, Inc., v. Fireman's Fund, Inc.,* 112 N.H. 257, 293 A.2d 757, 759[3] (1972); *Southern Guaranty Insurance Co. v. Scott, et al.,* 289 Ala. 159, 266 So.2d 602, 58 A.L.R.3d 1 (1972).

Fahrenheit; (4) to furnish a certificate of property damage and other specified public liability insurance coverage; (5) "that the installation, when completed, and all equipment shall be warranted against defect for a period of one (1) year after date of completion."

While Abco designed the standby facility, it did not design or manufacture any of the components employed in installing the facility. As to these component parts, Abco determined who could supply each and specified for the supplier what his component would be required to do and its capacity, but left it to the judgment of the supplier to furnish a component which would meet the requirements specified. The vaporizer, an integral part of the facility, was designed, manufactured and supplied by National Tank Company (hereinafter Natco).

A certificate of insurance was furnished Doane certifying that Federal Insurance Company (hereinafter Federal), the defendant in this case, had issued its comprehensive general liability insurance policy No. 7762–74–81 to Abco, as insured, covering property damage liability (and other coverage) for the period from April 16, 1971, to April 16, 1974. Pertinent provisions of the policy and endorsement are as follows:

"1. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

EXCLUSIONS

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to* a warranty of fitness or quality of the named insured's products or *a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;"* (emphasis supplied).

\* \* \* \* \* \*

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan specifications, advertising material or printed instructions prepared or developed by any insured; *but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;"* (emphasis supplied).

\* \* \* \* \* \*

"Coverage B—The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule as applicable to 'each occurrence.'

Subject to the above provision respecting 'each occurrence,' the total liability of the company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the schedule as 'aggregate.'

\* \* \* \* \* \*

"(2) all property damage arising out of and occurring in the course of operations performed for the named insured by independent contractors and general supervision thereof by the named insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the named insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;"

\* \* \* \* \* \*

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

\* \* \* \* \* \*

"incidental contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;"

"(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

LIABILITY # 3

\* \* \* \* \* \*

G 304

## EXCLUSION

(Completed Operations Hazard and Products Hazard)

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

This endorsement \* \* \* forms a part of policy No. 7762–74–81 \* \* \*.

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."

All necessary components of the standby facility were assembled, connected and installed at Doane's plant in August, 1971. It was checked and the determination made that "everything was hooked up \* \* \*, that there was a source of fuel, and that it was operable \* \* \*." It was ready to be adjusted and tested under cold weather conditions. In October, it was checked and tested again, this time by Abco turning off the natural gas supply and starting up the standby system. From this, it was determined that all components were functioning. Adjustments were made at this time, but it was still too warm to make such

adjustments, if any, as would be necessary for wintertime operation.

In November or December, 1971, before the facility could be tested and adjusted under cold weather conditions, the supplier curtailed the use of natural gas for industrial purposes. The standby system was turned on and, after brief use, it failed. Abco made several adjustments in an attempt to locate the difficulty and correct it, all to no avail. After many tests and experiments, it was determined by Abco that the problem was in the vaporizer; that the vaporizer was defective and not functioning as required in that it was not converting into vapor all the liquid propane supplied to it but was permitting a liquid carryover to come through into the mixer. Natco, informed that its vaporizer was not meeting the requirements specified by Abco, said that it was. Nevertheless, it inspected the system and with Abco attempted to keep it operating (before and after the fire) through periods when the natural gas supply was curtailed, but each time it would fail after brief use. On February 4, 1972, during the period of time when Natco was attempting to adjust or correct the vaporizer, an explosion and fire, apparently caused by the standby facility, occurred at Doane's and caused considerable damage to its plant, but none to the standby facility. Some time after the fire, Natco replaced the vaporizer with another and from that point on the facility functioned as required without mishap. The requirements and capacity specified by Abco for the vaporizer were never changed or altered either for the original, which was deficient, or for its replacement; the specifications remained the same from beginning to end.

After the fire, Doane sued Abco and others (suppliers of components) to recover for the damages caused by the fire, alleging negligence (count I) and breach of warranty (count II). Abco requested Federal to defend it against Doane's suit pursuant to the

policy, but Federal refused. Grounds for its refusal were that, under the policy, the damage sustained by Doane occurred after Abco had completed its operation of installing the standby facility and the policy issued to Abco did not afford coverage for this occurrence, because Abco did not purchase coverage for the hazards of completed operations.

This, in substance, is Federal's defense to this declaratory judgment action. Abco's pleaded theory of recovery is, in substance, that the fire at Doane's plant and any damage thereto occurred during installation of the facility and before completion.[2] In other words, Abco's position is that the operation was not completed until all adjustments and testing had been made and the defective vaporizer replaced with one which would function so that the facility could operate in the manner and be used for the purpose for which it was designed.

The case was tried before the court without a jury. The evidence consisted of various admissions, letters and documents, and the deposition testimony of three witnesses, one of whom (the president of Abco) also testified briefly in person.

■ We review the case "upon both the law and the evidence as in suits of an equitable nature." Rule 73.01, subd. 3(a). In *Murphy v. Carron*, 536 S.W.2d 30[1] (Mo. banc 1976) the court held that this means "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." 536 S.W.2d at 32.

The trial court made and filed findings of fact and conclusions of law. The facts stated above, found by us on our review of the evidence, are essentially the same as those found by the trial court. In addition, the trial court found and concluded (1) that the provisions of the policy as to when opera-

2. Pertinent allegations of Abco's petition are: "that on * * * the 4th day of February, 1972, *during the construction and installation and adjustment and testing* of the * * *

Facility a fire and explosion occurred at the Plant of Doane * * *." (emphasis supplied).

tions shall be deemed completed are clear and unambiguous; and (2) that the installation of the standby facility had been completed in August, 1971, leaving as the only operations to be performed those involving further service, such as adjustments and corrections, and replacement of the defective vaporizer.

Abco contends on appeal, as it did in the trial court, that the terms of the policy are ambiguous and, therefore, should be construed most favorably to the insured. *Central Surety and Insurance Corporation v. New Amsterdam Casualty Company*, 359 Mo. 430, 222 S.W.2d 76, 78[1] (1949). It asserts that the policy is ambiguous in that it provides coverage for property damage under the exceptions to the exclusions of paragraphs (a) and (k) emphasized by italics in the above quotations of those paragraphs; and, that these exceptions, when considered with the endorsement excluding coverage for the hazards of "completed operations," created an ambiguity in the exclusions intended which must be resolved against Federal and in favor of coverage by the policy for this occurrence.

■ This contention is without merit. The policy of insurance and an endorsement must be read together where there is a dispute as to its meaning, and they should be construed together unless they are in such conflict they cannot be reconciled. *Cain v. Robinson Lumber Co.*, 295 S.W.2d 388, 390–391[1–3] (Mo. banc 1956). If the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement. *Linenschmidt v. Continental Casualty Co.*, 356 Mo. 914, 204 S.W.2d 295, 300[3] (1947); *Empire Fire and Marine Insurance Co. v. Brake*, 472 S.W.2d 18, 23[3] (Mo.App. 1971).

■ It is clear from the endorsement to this policy that the intention was to modify its provisions relating to comprehensive general liability insurance by excluding from the property damage liability coverage, property damage included within the completed operations hazard. The fact that

some of the coverage for the completed operations hazard is provided for in an exception to an exclusion rather than in the general coverage provisions makes no difference under the wording of the endorsement; so long as the coverage appears in the comprehensive general liability insurance portion of the policy, it is to be excluded by this endorsement. There is no reason why coverage "saved" by an exception to an exclusion of the policy should be any more exempt from exclusion by the endorsement than are the general coverage provisions themselves. The effect of the endorsement was, therefore, to exclude property damage included within the completed operations hazard regardless of whether coverage for that hazard was provided for by the general coverage provisions of the comprehensive general liability insurance portion of the policy or by an exception to an exclusion from the general coverage provisions.

■ No ambiguity is created by the wording of the endorsement or by the wording of the exceptions to exclusions (a) and (k). The trial court did not err in concluding that the provisions of the policy are clear and unambiguous.

■ Abco also contends that the endorsement excluding from coverage liability for any damage which occurred after its operations had been completed did not relieve Federal of its obligations under the policy, because there is "no substantial evidence that the installation had been completed for its intended use before February 4, 1972, the date of the loss"; that the evidence is that the loss occurred before completion of the operations it had contracted to perform.

Under the definition of "completed operations hazard" the earliest time at which it could be said that the operations shall be deemed completed is stated in paragraph numbered (1) to be: when all operations under the contract between Abco and Doane have been completed. Another part of the definition to be considered in connection with paragraph (1) is the following unnumbered paragraph: "Operations which

may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

What are the operations required by the contract to be completed by Abco? Was Abco's contract to install a standby facility which, when completed, *should* be capable of providing Doane with heat of a quantity and quality sufficient to permit its plant to continue to operate while the natural gas supply was curtailed? Or, was it to install a facility which, when completed, *would* be capable of supplying such heat? If Abco's obligation was the former, then its operations were completed in August, before the fire, because at that time all necessary components had been assembled and installed and, according to design, *should* have been capable of functioning as required. And the work performed thereafter by Abco was mere "further service * * *, or correction * * * or replacement because of * * * deficiency * * *" in the vaporizer. If however, Abco's obligation was the latter, then the operations to be performed by it were not completed until after the fire, because at no time before the fire was the facility installed capable of supplying sufficient heat to permit Doane's plant to continue to operate after the natural gas supply had been curtailed. It failed after brief use each time it was called upon to function. It was not until after another vaporizer was installed that the facility could be used; and, it was not until then that Abco's operations were "completed" within the meaning of the policy.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

SEILER, C. J., and MORGAN, BARDGETT, FINCH and DONNELLY, JJ., concur.

RENDLEN, J., not participating because not a member of the court when cause submitted.