FRESARD v MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY

Docket No. 46110. Submitted March 5, 1980, at Lansing.—Decided
May 20, 1980. Leave to appeal applied for.

Plaintiffs George A. Fresard, Donald Fresard, George A. Fresard,
Jr., Thomas Fresard, Fresard Building Company and Fresard
Builders, Inc., are builders who carried comprehensive general
liability insurance with defendant, Michigan Millers Mutual
Insurance Company. Mr. and Mrs. Harding entered into a
contract with Fresard Building Company for the construction of
a new home. After construction, when the Hardings moved in,
they experienced water accumulations in the basement causing
deterioration of the walls and foundation. The problem was
that an opening in the drainage system allowed sand to flow
into the system and be carried away from under the footings,
causing a corner of the house to drop and the basement wall to
drop and buckle. The problem was caused by the installation of
standard drain tile material in an abnormal ground condition.
The drain tile allowed the entry of sand into the system. The
Hardings brought suit against plaintiffs. Plaintiffs notified de-
fendant of the action, which defendant undertook to defend
under a reservation of rights understanding. The claim was
settled, with plaintiffs contributing 50 percent of the settlement
and defendant contributing 50 percent. Plaintiffs brought an
action against defendant in Macomb Circuit Court for a declar-
atory judgment that defendant was obligated to defend the
lawsuit brought against plaintiffs by the Hardings and to pay
any judgments rendered against plaintiffs. The policy contained
the following language:

"This insurance does not apply: (a) To liability assumed by
the insured under any contract or agreement, except an inci-
dental contract; but this exclusion does not apply to a warranty
of fitness or quality of the named insured's products or a
warranty that work performed by or on behalf of the named
insured will be done in a workmanlike manner; * * * (k) to
bodily injury or property damage resulting from the failure of

REFERENCES FOR POINTS IN HEADNOTE
[1] 43 Am Jur 2d, Insurance § 279.

the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by the insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work; * * * (m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith".

The court, George R. Deneweth, J., granted summary judgment for plaintiffs. Defendant appeals. *Held:*

1. An insurer has a duty to express clearly the limitations of its obligation, and any ambiguities in an insurance policy must be construed against the insurer. A technical construction of policy language which would defeat an expectation of coverage is not favored. Section (m) is repugnant to section (a), and, since section (a) is the more specific clause, it should govern.

2. Coverage is not barred by exclusion (k). The damage was caused by the active harm of the drainage system's carrying away of sand from beneath the foundation of the house.

Affirmed.

INSURANCE — LIABILITY INSURANCE — EXCLUSIONS — AMBIGUOUS
TERMS — CONSTRUCTION OF AMBIGUITIES.

An insurer has a duty to express clearly the limitations of its obligation, and any ambiguities in an insurance policy must be construed against the insurer; a technical construction of policy language which would defeat an expectation of coverage is not favored.

*Scholl, Theut, Robinson, Steig & Schellig,* for plaintiffs.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell),* for defendant.

Before: M. J. KELLY, P.J., and D. F. WALSH and BEASLEY, JJ.

BEASLEY, J. Plaintiffs are builders who carry

comprehensive general liability insurance policies with defendant. When a lawsuit for damages was brought against plaintiffs by William Harding and Delphine Harding, as purchasers, arising out of a building contract for the construction and sale of a new house, a dispute arose between plaintiffs and defendant concerning coverage under the insurance policy. Defendant undertook the defense under a reservation of rights understanding. During trial, this claim against plaintiffs was settled for $50,000, one-half of which was contributed by each, *i.e.,* by plaintiffs and by defendant. Plaintiffs then brought this action for a declaratory judgment that defendant was obligated under the insurance policy to defend the lawsuit brought against plaintiffs and to pay any judgments rendered against plaintiffs. Both the plaintiffs and the defendant sought summary judgment. The trial judge filed a written opinion, holding in favor of plaintiffs and against defendant. Defendant appeals as of right.

The facts are that in 1970, after the Hardings moved into the new house built by plaintiffs, they began to experience problems. Water began to accumulate on the basement floor, there was recurrent flooding of the basement and the foundation and walls began to deteriorate. This situation continued, and plaintiffs embarked on a program of repairs until March, 1976.

According to the parties' stipulation of facts, the cause of the problem was an opening in the drainage system which allowed sand to flow into the system and be carried away. Some of this sand came from under the footings, causing a corner of the house and a basement wall to drop and buckle. This problem was accentuated by the installation of standard drain tile material in an abnormal

ground condition. The drain tile allowed entry of sand into the system.

This case hinges upon the interpretation to be given the following exclusionary provision in the policy issued by the defendant:[1]

"This insurance does not apply:

"(a) To liability assumed by the insured under any contract or agreement, except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

\* \* \*

"(i) to property damage to

"(1) property owned or occupied by or rented to the insured,

"(2) property used by the insured, or

"(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

\* \* \*

"(j) to property damage to premises alienated by the named insured arising out of such premises or any part thereof;

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by the insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

"(l) to property damage to the named insured's prod-

[1] Both sides agree that the policy does not grant coverage unless there is an express exception to its exclusion.

ucts arising out of such products or any part of such products;

"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith".

Defendant argues that plaintiffs are seeking to recover property damage to the completed building, which was work performed by them, that the damage arose out of the work and that, therefore, there is no coverage under exclusion paragraph (m).

Plaintiffs argue, however, that paragraph (a) specifically excepts from exclusion damages caused by breach of warranty that the work performed by the insured is done in a workmanlike manner. Plaintiffs reason that, since the Hardings brought suit based on breach of warranty, the exception to exclusion (a) applies and would grant coverage.

This is a case of first impression in Michigan. In such event, we give consideration to cases in other jurisdictions which have construed insurance policy clauses identical to the ones here.

An often cited South Dakota case, relied upon by defendant, is *Haugan v Home Indemnity Co.*[2] In that case, the plaintiff designed and constructed an aircraft hanger with adjoining office building. After construction, the building separated from its foundation and was damaged. The court, in construing a policy with exclusion clauses identical to those in this case, held that coverage was excluded under paragraph (m). The court, in *Haugan,* reasoned as follows:

"Exclusion (a) does not extend or grant coverage. To

[2] 86 SD 406, 413; 197 NW2d 18 (1972).

the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. When considered with exclusion (m) it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's own work or work product."

In a nutshell, *Haugan* found that there was no direct conflict between clauses (a) and (m) and that, applying exclusion (m), the only claims for breach of warranty based on property damage covered under the policy were those which resulted in property damage beyond the insured's own work or work product.

The dissenting opinion in *Haugan* reasoned that the effect of the majority opinion was to subordinate exclusion (a) to that of (m). It was argued that the two clauses were of equal rank and should have been read together with the specific clause (a) prevailing over the general clause (m). The result would then be an interpretation that the policy would not cover property damage to work performed by the insured arising out of that work with the exception of damage to the work resulting from breach of warranty.

In *Fontainebleau Hotel Corp v United Filigree Corp*,[3] the court reached the same result as the *Haugan* dissent. There, the court concluded that exclusion (m) was repugnant to exclusion (a). They reasoned that (a) was the more specific clause and that, therefore, the terms of (a) governed. Additionally, the court noted:

[3] 298 So 2d 455 (Fla App, 1974).

"Exclusion (m) * * * take[s] away the coverage granted by Exclusion (a). The law does not allow such a situation. A policy may not give a right in one paragraph and retract it in another unless the limitation is clearly expressed. We do not have an expression of any kind in the case at bar."[4]

The same reasoning was employed to find that coverage existed in *Federal Insurance Co v PAT Homes, Inc.*[5]

We find that the rationale in *Fontainebleau* and *Federal Insurance Co* is more persuasive than that in *Haugan*. Further, such a rationale is in keeping with the general rules regarding construction of insurance policies in Michigan.

When there is an ambiguity, insurance policies drafted by the insurer must be construed in favor of the insured to uphold coverage.[6] An insurer has a duty to clearly express the limitations in its policy.[7] A technical construction of policy language which would defeat an expectation of coverage is not favored.[8]

We find that if the defendant intended to exclude all property damage to the work product of the insured arising out of that work, including damage for breach of warranty, that limitation must be clearly expressed in the policy. Here, it was not. On the contrary, under the clear wording of the policy, an expectation of coverage was cre-

[4] *Id.,* 460.

[5] 113 Ariz 136; 547 P2d 1050 (1976).

[6] *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62, 64; 250 NW2d 541 (1976), *Francis v Scheper,* 326 Mich 441; 40 NW2d 214 (1949).

[7] *Ornamental Iron & Stair Co v General Accident & Life Assurance Corp, Ltd,* 68 Mich App 259; 242 NW2d 544 (1976).

[8] *Crowell v Federal Life & Casualty Co,* 397 Mich 614; 247 NW2d 503 (1976), *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767; 282 NW2d 472 (1979).

ated for claims arising from property damage to the insured's work product grounded on breach of warranty.

Therefore, we interpret the exclusion in paragraph (m) to exclude coverage for property damage to the insured's work product arising out of that work only in cases other than those grounded in breach of warranty. Accordingly, we conclude that the trial court did not err in finding coverage was not excluded under paragraph (m).

Defendant's next argument is that coverage is denied plaintiffs by paragraph (k), *supra*, the "active malfunctioning" provision. Defendant argues that the trial court erred in finding that the water drainage system installed by the plaintiffs "actively malfunctioned" so as to come within the exception to the exclusion in the policy. We do not agree.

The active malfunctioning exception to exclusion (k) is defined in *American Employer's Ins Co v Maryland Casualty Co*[9] as follows:

"Design errors resulting in mere 'passive' failure to discharge an intended function are regarded as the insured's normal business risk and are excluded from coverage, while design errors themselves causing some positive or 'active' harm deemed extraordinary in the insured's business are covered. Thus, to recite some of the hypotheticals appearing in commentaries dealing with the clause, the policy is not intended to cover liability resulting from the faulty design of an insecticide which fails to kill insects, a hair tonic which fails to prevent baldness, or a rust inhibitor which fails to inhibit rust. On the other hand, the active malfunctioning exception would apply to provide coverage for liability resulting from an insecticide which harms crops to which it is applied, a hair tonic which causes a scalp

[9] 509 F2d 128 (CA 1, 1975).

rash, or a rust inhibitor which corrodes a radiator to which it is added." (Footnotes omitted.)[10]

In this case, the water drainage system originally employed by the plaintiffs did carry away the water from the house foundation, which was its intended purpose. However, the parties' stipulated statement of facts indicates that the drainage system also allowed entry of sand, thereby draining away sand along with the water, damaging the house.

Accordingly, the design error in the water drainage system used by plaintiffs caused the positive or "active" harm of drawing sand away. Such an "active malfunctioning" comes within the exception to exclusion (k) and, therefore, results in coverage to plaintiffs. The trial judge did not err in so finding.

Affirmed.

[10] *Id.,* 130.