TIANO v AETNA CASUALTY & SURETY COMPANY

Docket No. 44503. Submitted May 13, 1980, at Detroit.—Decided December 2, 1980.

Joseph K. Tiano, a minor, was severely scalded and burned as a result of a hot water boiler explosion at his grandparents' home. An action was brought in Wayne Circuit Court against the manufacturer of the boiler and against William J. Pry, the heating and plumbing contractor who installed the boiler. The complaint alleged that Pry had been negligent in failing to properly install a valve in the boiler or that the valve was unsuitable and defective or both. Aetna Casualty & Surety Company, Pry's insurer, refused to defend Pry against the action, claiming that exclusions in Pry's policy relieved Aetna of any duty to defend or pay any judgments resulting from the action against Pry. A $300,000 consent judgment was entered against Pry and Pry assigned his rights under the policy to plaintiff, Gerald K. Tiano. Tiano, individually and as next friend ofb Joseph K. Tiano, brought the instant action against Aetna seeking recovery under the insurance policy. Wayne Circuit Court, Roland L. Olzark, J., granted Aetna's motion for summary judgment on the basis that the exclusions contained in the policy relieved Aetna of all liability with respect to the explosion and the judgment against Pry. Plaintiff appeals. *Held:*

The policy issued by the defendant unambiguously excluded coverage for the type of liability involved here. The plaintiffs have no cause of action against the defendant.

Affirmed.

T. M. BURNS, P.J., dissented. He would reverse the lower court order granting summary judgment to defendant and hold that the scope of Aetna's liability under the insurance contract was not so definite that Aetna was entitled to summary judgment.

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am Jur 2d, Insurance § 353.
[2, 3] 43 Am Jur 2d, Insurance § 271.

Opinion of the Court

1. Insurance — Endorsements — Conflicting Provisions — Alteration of Policy.

   The endorsement will prevail and the policy will remain in effect as altered by the endorsement where the language of the endorsement and the general provisions of an insurance policy conflict.

Dissent by T. M. Burns, P.J.

2. Insurance — Construction of Insurance Policy — Ambiguous Clauses — Construction Against Insurer.

   *Any ambiguity that exists in clauses of an insurance policy that was drafted by an insurer must be construed against the insurer to the benefit of the insured.*

3. Insurance — Construction of Insurance Policy — Reasonable Expectation of Coverage.

   *Insurance policies should not be construed in a manner that would defeat the insured's reasonable expectation of coverage.*

*Joselyn, Rowe, Jamieson & Grinnan, P.C.* (by *William J. Liedel),* for plaintiffs.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.,* for defendant on appeal.

Before: T. M. Burns, P.J., and R. M. Maher and M. E. Clements,* JJ.

M. E. Clements, J. Plaintiffs appeal as of right from a March 16, 1979, order granting defendant's motion for summary judgment. The plaintiffs had brought suit against the defendant insurance company seeking recovery of a $300,000 consent judgment which had previously been entered in favor of the plaintiffs against William J. Pry, a heating and plumbing contractor who had an insurance policy with the defendant. Summary judgment was granted based on "products hazard" and "com-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pleted operations" exclusions contained in the policy issued to Pry.

In September of 1971, Joseph Tiano, age 2, was burned when a hot water boiler exploded while he was visiting the home of his grandparents. Suit was commenced against Pry, who had converted the heating system at the grandparents' home to a natural gas system prior to the time of the explosion. The plaintiffs' complaint alleged that Pry was negligent because he failed to properly install a valve and because the valve furnished and installed by him was unsuitable and defective. Pry contacted the defendant insurance company which refused to defend the action on the basis of exclusionary clauses contained in the policy. After the consent judgment was entered, Pry assigned his claims against the defendant to the plaintiffs.

The insurance policy issued to Pry, under the heading "Comprehensive General Liability Insurance", reads as follows:

"1.  BODILY INJURY LIABILITY COVERAGE

PROPERTY DAMAGE LIABILITY COVERAGE

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient * * *".

Immediately following this statement a number of exclusions are listed. The first of these exclusions is noted by the plaintiffs and reads as follows:

"This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement, except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."

Exclusion (k) in the same section reads as follows:

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work."

On a separate page preceding the above passages there is an endorsement which reads:

"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

"COMPREHENSIVE GENERAL LIABILITY INSURANCE EXCLUSION

"(Completed Operations Hazard and Products Hazard)

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."

Another page of the policy, under the heading "Description of Hazard", contains a Hazard D

"Completed Operations" and a Hazard E "Products" in the printed form. Typed below the description of the hazards covered, together with the code and rates, is the legend, "D & E NOT COVERED".

"Completed Operations Hazard" and "Products Hazard" are defined in the Definitions section near the end of the policy. The completed operations definition reads as follows:

" 'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

Products hazard and named insured's products are defined as follows:

" 'products hazard' includes bodily injury and property damage arising out of the named insured's prod-

ucts or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

\* \* \*

" 'named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold."

The issue presented here is whether the completed operations exclusion or the products hazard exclusion preclude recovery from the insurer for the consent judgment entered against the insured for damages which arose because of the insured's negligence in furnishing and installing an improper valve in converting a heating system to natural gas. There is no dispute that the explosion occurred after the operation was completed. There are numerous recent cases from other jurisdictions which have found that virtually identical exclusionary clauses precluded recovery from insurance companies for injuries arising after operations had been completed or when the injuries arose out of the insured's products.[1] We find the reasoning of those cases applicable to this appeal and affirm the

[1] *Martinez v Hawkeye-Security Ins Co,* 195 Colo 184; 576 P2d 1017 (1978), *Friestad v Travelers Indemnity Co,* 393 A2d 1212 (Pa Super, 1978), *Sandpiper Construction Co v United States Fidelity & Guaranty Co,* 348 So 2d 379 (Fla App, 1977), *Abco Tank & Manufacturing Co v Federal Ins Co,* 550 SW2d 193 (Mo, 1977), *Aetna Casualty & Surety Co v Rothman,* 331 So 2d 81 (La App, 1976), *Bouchard v Hartford Accident & Indemnity Co,* 369 Mass 970; 343 NE2d 372 (1976), *Roberts v P & J Boat Service, Inc,* 357 F Supp 729 (ED La, 1973). See also West's General Digest, Insurance, §§ 435.24(4), (5).

summary judgment order entered in favor of the defendant.

The plaintiffs argue that in the first paragraph under the "Comprehensive General Liability Insurance" heading and in exclusion (a) immediately following, quoted earlier in this opinion, the defendant agreed to pay on behalf of the insured any claims with respect to breach of warranties of fitness or quality of the insured's products and breach of warranties that work performed by the insured would be performed in a workmanlike manner. It is claimed that the policy is ambiguous when this exclusion is read in conjunction with the products hazard and completed operations exclusions and that such ambiguities, under well established Michigan law, must be resolved against the insurer. Similar arguments with respect to virtually identical language have been rejected by courts of other jurisdictions. *Shelby Mutual Ins Co v LaMarche,* 371 So 2d 198 (Fla App, 1979), *St Paul Fire & Marine Ins Co v Coss,* 80 Cal App 3d 888; 145 Cal Rptr 836 (1978), *Abco Tank & Manufacturing Co v Federal Ins Co,* 550 SW2d 193 (Mo, 1977), *Roberts v P & J Boat Service, Inc,* 357 F Supp 729 (ED La, 1973). In addressing this question, the *Roberts* Court stated at 733-734:

"It is clear from the wording of the endorsement in this case that the intention was to modify the provisions of the policy relating to comprehensive general liability insurance by excluding from the bodily injury liability coverage and property damage liability coverage bodily injury or property damage included within the completed operations hazard and products hazard. The fact that some of the coverage for the completed operations hazard or products hazard is provided for in an exception to an exclusion rather than in the general coverage provisions makes no difference under the

wording of this endorsement; so long as the coverage
appears in the comprehensive general liability insur-
ance portion of the policy, it is to be excluded by the
endorsement. Counsel has suggested no reason, and
none suggests itself, why coverage provided by, or saved
by, an exception to an exclusion of the policy, should be
any more exempt from exclusion by endorsement than
are the general coverage provisions themselves. The
endorsement had the effect therefore of excluding bod-
ily injury and property damage included within the
completed operations hazard or the products hazard
regardless of whether coverage for those hazards was
provided for by the general coverage provisions of the
comprehensive general liability insurance portion of the
policy or by an exception to an exclusion from those
general coverage provisions."

We are not unmindful of the recent decision of
another panel of this Court which found that the
same language contained in the policy at issue
here with respect to breach of warranties created
an ambiguity when read in conjunction with other
exclusionary clauses. *Fresard v Michigan Millers
Mutual Ins Co,* 97 Mich App 584; 296 NW2d 112
(1980). While all of the pertinent policy language
quoted in *Fresard* is also contained in the policy
issued by the defendant here, the present policy
contains additional endorsements specifically ex-
cluding completed operations and products hazard
coverage which were not present in *Fresard* nor in
the cases relied on by the *Fresard* Court in support
of its finding of ambiguity. If the language of an
endorsement and the general provisions of the
policy conflict, the endorsement will prevail, and
the policy remains in effect as altered by the
endorsement. *Peterson v Zurich Ins Co,* 57 Mich
App 385; 225 NW2d 776 (1975). See also *Abco
Tank, supra,* and *Roberts, supra.* The present case
is distinguishable from *Fresard* on the basis of the

additional endorsements. We find no ambiguity in the policy.

The plaintiffs also argue that the gist of their allegations against Pry was that he selected and furnished a valve which should not have been installed in the first place rather than that he installed a valve that was defective. It is claimed that, because of this distinction, neither the products hazard exclusion nor the completed operations exclusion is applicable. It is claimed that the products hazard exclusion only applies when the product is defectively made. It is also argued that the completed operations exclusion does not come into play because the complaint against Pry alleged negligence in furnishing the wrong part rather than that the part was negligently installed. We find this interpretation to be a strained one. A reading of the two exclusions suggests that they are both applicable when the insured furnished and installed an improper product. It should be noted that the completed operations exclusion defines "operations" as including materials, parts or equipment furnished in connection therewith.

In *Roberts, supra,* the United States District Court rejected the plaintiff's argument that the products hazard and completed operations exclusions were not applicable to allegations that the insured was negligent in connecting the wrong type of clutch to the engine which exploded. See also *Parma Seed, Inc v General Ins Co of America,* 94 Idaho 658; 496 P2d 281 (1972), *Haugen v Auto-Owners Ins Co of Lansing, Michigan,* 191 NW2d 274, 276 (ND, 1971).

Several earlier decisions of this Court warrant comment. In *Brant v Citizens Mutual Automobile Ins Co,* 4 Mich App 596; 145 NW2d 410 (1966), the

issue was whether an insurance policy provided coverage for a claim against the insured that he negligently sold an improper natural gas heater and that a death by asphyxiation resulted. The insurance policy contained a products hazard exclusion which arose only if the *accident* occurred away from the premises owned by the insured. This Court held that the exclusion was not applicable because the original accident occurred when the insured sold the improper product on his premises. The exclusions in the present case refer to "bodily injury or property damage", rather than "accident", as in *Brant*. *Brant* can therefore be distinguished because it is clear that the bodily injury in the present case occurred away from premises owned by the insured and after operations had been completed.

It should also be noted that *Brant* involved a policy issued prior to 1966 when the insurance industry revised the form of its general liability policies in order to more clearly set forth the products hazard and completed operations exclusions:

"The insurance policy held by the Commission is the so-called revised standard comprehensive general liability insurance policy adopted in 1966 by the insurance industry. Therefore, cases decided before 1966 are of scant use in this case. In fact, the new form of policy, separately and more fully defining 'completed operations' and 'products,' was made necessary by court interpretations of the old forms contrary to underwriting intent." *Williams v New Mexico State Highway Comm,* 82 NM 550, 551; 484 P2d 770, 771 (NM App, 1971).

In *Ornamental Iron & Stair Co v General Accident & Life Assurance Corp, Ltd,* 68 Mich App 259; 242 NW2d 544 (1976), a painter was electro-

cuted because of alleged negligence on the part of the insured in the construction of a safety fence. The insured sought a declaratory judgment that its insurance policy provided coverage for any liability. It was undisputed that the painter's death occurred after the insured's operations had been completed. In the section of the policy listing exclusions, under the heading "Products Hazard", a products hazard exclusion and a completed operations exclusion were both recited. This Court upheld the trial judge's finding that the policy in question was ambiguous and that ambiguities must be resolved in favor of a finding of coverage.

The *Ornamental Iron* Court quoted with approval a lengthy passage from a case from another jurisdiction. The passage indicated that a completed operations exclusion is ambiguous when it is claimed to be applicable to a contractor who is not involved in the independent sale of products. This Court did not add any of its own reasoning to the quoted passage.

Although *Ornamental Iron* was decided in 1976, the history of the case indicates that a pre-1966 policy was involved since the painter was electrocuted in 1965. The complete text of the *Ornamental Iron* policy is not reproduced in that opinion. However, there appear to be several distinct differences between that policy and the one involved in the present case. In the present case, the completed operations exclusion and the products hazard exclusion are not listed under a single products heading. This separate listing emphasizes the fact that a contractor has no liability protection under the policy once his work is completed. Additionally, an entire separate page of the policy notes that the protection afforded by the general liability insurance is modified by these two exclu-

sions. Finally, unlike the broad insuring clause in *Ornamental Iron,* the general clause in the policy involved here limits itself by stating that the insurer will pay all sums which the insured becomes legally obligated to pay as damages because of bodily injury or property damage *to which this insurance applies.* See *Sandpiper Construction Co, Inc v United States Fidelity & Guaranty Co,* 348 So 2d 379, 381 (Fla App, 1977), which distinguishes, on similar grounds, a previous case which had found an ambiguity in the completed operations and products hazard exclusions.

The policy issued by the defendant unambiguously excluded coverage for the type of liability which arose here. The plaintiffs have no cause of action against the defendant based on their judgment against Pry. The order granting summary judgment in favor of the defendant is affirmed.

R. M. Maher, J., concurred.

T. M. Burns, P.J. *(dissenting).* I dissent.

Unlike the majority I am unable to distinguish the liability exclusion clauses in the instant insurance policy from those that were before the Court in *Fresard v Michigan Millers Mutual Ins Co,* 97 Mich App 584; 296 NW2d 112 (1980). In that case, this Court considered an insurance contract that contained a breach of warranty clause similar to that in the instant case and found that the clause created an ambiguity when read in conjunction with other exclusionary clauses. I believe that a similar result is warranted in the instant case.

Any ambiguity that exists in clauses of an insurance policy that was drafted by an insurer must be construed against the insurer to the benefit of the insured. *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62; 250 NW2d 541

(1976). This Court should not construe insurance policies in a manner that would defeat the insured's reasonable expectation of coverage. *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767; 282 NW2d 472 (1979).

Despite the additional endorsements in the instant insurance policy a person insured under it could reasonably expect coverage in the instant factual situation. Therefore, I would reverse the lower court order granting summary judgment to defendant. The scope of defendant's liability under this insurance contract is not so definite that defendant should be held entitled to summary judgment.