LOKEN, Circuit Judge.
Turbine Conversions, Ltd., of Nunica, Michigan (“Turbine”), sold two PT6 Pratt & Whitney turbine engines and two T45 conversion kits to Cartillar Flying Service of Hickory Ridge, Arkansas (“Cartillar”). Turbine completed the conversions, which entailed installing the turbine engines in Cartillar’s agricultural aircraft, and returned the converted airplanes to Cartillar in Arkansas. Shortly thereafter, the converted engines suffered catastrophic failures. Cartillar sued Turbine for breach of warranty and recovered a substantial judgment for damages to the engines. In this separate action by Turbine’s insurer, Reliance National Insurance Company seeks a declaratory judgment that its liability policy for the applicable period did not cover those damages. The district court[1] granted judgment in favor of Reliance, concluding that business risk exclusions in the policy preclude coverage for damage to the products Turbine sold to Cartillar. Turbine, Cartillar, and their owners appeal. The parties agree that Michigan law governs the coverage issue. Construing the insurance policy and Michigan law de novo, see St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council, 98 F.3d 343, 345 (8th Cir.1996) (standard of review), we affirm.
The Reliance policy was a comprehensive general liability (“CGL”) policy tailored to Turbine’s aircraft- and airport-related business. As the policy name suggests, the CGL form of policy is used to offer insureds a buffet of standard business liability coverages. Each insured selects the types and amounts of coverage that are suitable to its business. These coverages are recorded on the policy’s declarations page. Other policy terms and conditions, such as coverage definitions, conditions, and exclusions, appear in standard printed policy documents that accompany the declarations page. Although each insurer is free to formulate its own CGL policy, this policy structure has been developed by a nationwide industry service organization and is very widely (if not universally) employed. See generally Fresara v. Michigan Millers Mut. Ins. Co., 414 Mich. 686, 327 N.W.2d 286, 287-88 (1982).
The Reliance policy stated that it covered bodily injury and property damage to which this insurance applies. It is undisputed that Cartillar’s engine damage falls within the policy’s definition of property damage — “injury to or destruction of tangible property.” Under Michigan law, the term “to which this insurance applies” subjected the general insuring clause to the limitations set forth in the policy exclusions. See Tiano v. Aetna Cas. & Sur. Co., 102 Mich.App. 177, 301 N.W.2d 476, 481 (1980). The applicable insurance was defined in the “coverage parts” set forth in the policy’s declarations page and attachments. The declarations page stated that the policy provided “Owners’, Landlords’ and Tenants’ Liability Insurance,” “Hangarkeepers’ Liability Insurance,” “Contractual Liability Insurance,” and — most relevant to this case — “Completed Operations and Products Liability Insurance.” An attachment to the declarations page declared, in part, that Completed Operations coverage is provided for “T45 Conversions and Sale of PT6 Engines Installed,” the products and work Turbine sold to Cartillar in the underlying transaction here at issue.[2]
*912 The “completed operations” and “products”coverages were defined in a printed portion of the policy entitled “Comprehensive General Liability Insurance — Coverage Part.” These definitions provided in relevant part:
“completed operations hazard” includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from the premises owned by or rented to the named insured. “Operations” include materials, parts, or equipment furnished in connection therewith.
“products hazard” includes bodily injury and property damage arising out of the named insured’s products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.
Turbine was liable to Cartillar for property damage arising out of Cartillar’s rebanee upon Turbine’s warranties. The damage occurred after Turbine’s operations were completed and after Turbine had relinquished the products to Cartillar. Thus, if our analysis of the relevant policy provisions ended here, Turbine’s loss would be covered.
However, the policy also contained numerous exclusions, which appeared in the same printed portion of the policy as the definitions of the completed operations and products hazards. Relevant to this case are three so-called “business risk” exclusions:
This insurance does not apply ...
(l) to property damage to the named insured’s products arising out of such products or any part of such products;
(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(n) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured’s products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.
Applying Michigan law, the district court concluded that these exclusions “are broad, unambiguous, and all-inclusive,” they “hmit the circumstances under which completed operations coverage exists,” and therefore they “preclude coverage for the catastrophic failure of the two engine conversions completed by Turbine for Cartil-lar.” We agree.
Given the structure of the policy, we think it clear that these exclusions apply to each of the coverage parts disclosed on the declarations page and its attachments.[3] Accord Hawkeye-Security Ins. Co. v. Vector Const. Co., 185 Mich.App. 369, 460 N.W.2d 329, 335 (1990). This construction is consistent with the purposes of both the products liability and *913 completed operations coverages, and the business risk exclusions.
The products hazard and completed operations provisions are not intended to cover damage to the insured’s products or work project out of which an accident arises. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.
Fresara, 327 N.W.2d at 292 (quotation marks and citations omitted). The business risk exclusions serve to limit the products and completed operations coverages in this manner. See generally 9 Russ & Segalla, Couch on Insuranoe § 130:8, at 130-19 (3d ed.1997). Thus, when applicable, these exclusions limit the coverages affirmatively provided by the completed operations and products liability coverage part on which Turbine and Cartillar rely.
Like the district court, we are not persuaded by appellants’ efforts to avoid application of these business risk exclusions. Turbine argues that the exclusions do not apply because the completed operations hazard specifically included damages arising from reliance on a Turbine warranty, such as Cartillar suffered, whereas the business risk exclusions did not refer to breaeh-of-warranty damages. However, the business risk exclusions unambiguously applied to all property damage to Turbine’s products and completed work. That all-inclusive exclusionary language may not be ignored simply because a coverage part referred specifically to one particular cause of that kind of property damage. Turbine further argues that the district court improperly ignored controlling Michigan precedent — the Michigan Court of Appeals decision in Fresard v. Michigan Millers Mut. Ins. Co., 97 Mich.App. 584, 296 N.W.2d 112, 114-15 (1980), that the interaction of the business risk exclusions was ambiguous and therefore must be construed in favor of the insured. However, after Fresará was affirmed by an equally divided Supreme Court of Michigan, 414 Mich. 686, 327 N.W.2d 286, the Michigan Court of Appeals declined to follow Fre-sará, holding that “the exclusions are not to be read cumulatively, but individually [and] each, standing alone, is clear and unambiguous.” Hawkeye-Security, 460 N.W.2d at 337. Therefore, we conclude Fresará is not controlling.
Cartillar argues that its catastrophic engine losses are covered because they were caused by a defective engine component, namely, gear failures. We disagree. The exclusions apply to property damage to Turbine’s products, both the engines and their defective components. “The words ‘product’ and ‘work’ in the exclusion refer to the insured’s entire product or work, not just to the component part from which the loss arose.” 9 Couch on Insurance § 129:13, at 129-26. This argument might well have merit had there been property damage to the airplanes in which the engines were installed, because the airplanes were not Turbine product or work. But all property damage to the engines themselves is subject to the business risk exclusions. Cartillar further argues that the “active malfunctioning” exception in another business risk exclusion[4] conflicts with exclusions (Z), (m), and (n), creating an ambiguity that must be resolved in favor of the insured. However, Hawkeye-Security established that the exclusions must be read individually, and that an exception to an exclusion cannot be construed as a grant of additional coverage. See 460 N.W.2d at 336-37. As the damages recovered by Cartillar were unambiguously ex- *914 eluded by exclusions (l), (m), and (n), Reliance’s policy did not cover Turbine’s loss.
The judgment of the district court is affirmed.

. The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas.

. This document, policy form AV 00 P038/39 00 1193 (which we will call Form 38/39), clarified the scope of the completed operations and products liability coverage part listed on the declaration page. Form 38/39 did not add another coverage part. Indeed, it limited thé completed operations and products coverages to the operations and products specified on the form, and it listed the premium bases for these coverages. Form 38/39 provided information necessary to define the hazards covered and thus comprised an es *912 sential part of the complete policy document. The declarations page described Form 38/39 as an "[e]ndorsement forming a part of this policy.” Form 38/39 included the warning, "This Coverage Part shall not be binding on [Reliance] unless attached to the Declarations Page.”

. For example, another attachment to the declarations page, policy form AV 00 P042 00 1193, stated that “the exclusion of ‘property damage’ to the insured's products ... shall not apply” to the products described in schedule (e) of Form 38/39, a schedule that did not include the T45 conversion and PT6 engine products. Form 42 was superfluous if the business risk exclusions did not otherwise apply to the completed operations and products coverages listed on Form 38/39.

. Exclusion (k) provides in relevant part: "This insurance does not apply ... to bodily injury or property damage resulting from the failure of the named insured's products or work completed ... if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work " (emphasis added).